Argued July 23, affirmed in part; reversed in part August 27, 1973

GILTNER, *Respondent, v.* COMMODORE
CONTRACT CARRIERS (No. 372-247), *Appellant.*
513 P2d 541

*Keith D. Skelton,* Portland, argued the cause and filed the brief for appellant.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Pozzi, Wilson & Atchison, and Dan O'Leary, Portland.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Defendant-employer Commodore Contract Carriers appeals from award of workmen's compensation and attorney fees to claimant. It contends: (1) that Nebraska rather than Oregon law is applicable for workmen's compensation determinations in the case; (2) that claimant was an independent contractor and not entitled to coverage under the Oregon law if it is applicable; (3) that the accident in question did not arise out of and in the course of employment; (4) that it was denied due process of law in that claimant's attorney refused to comply with the hearing officer's order providing for the taking of claimant's deposition; and (5) that an allowance of attorney fees made to claimant in the case is not sustainable.

Claimant owned and operated a truck used exclusively for hauling mobile homes from Commodore's affiliated corporation's manufacturing plant at Roseburg, Oregon to destination points outside of Oregon. The arrangement was under a written agreement by which claimant provided the truck and leased it to Commodore. Claimant lived in Portland. When he made trips in compliance with the lease he did so upon being called by Commodore's dispatcher in Roseburg. He would drive the truck from Portland to Roseburg, haul the mobile home to its destination (most often east or north of Oregon) and return to his home in Portland awaiting another call. He was required to make occasional hauls to California, which entailed extra travel in returning with the truck to his home in Portland.

Commodore provided all of the licenses required and placed its name upon the side of the truck. It paid expenses of operation and a minimum of $500 monthly to claimant. Monthly compensation of claimant was arrived at by totalling payments per mile which were scheduled in the lease for actual delivery miles. If this total were less than $500, $500 is what claimant received; if more, he received the total. Claimant could hire other drivers but they were subject to control by Commodore. Claimant could be terminated at any time without notice on several contingencies, including failure to obey "* * * his duties or obligations under this lease * * *." Claimant could terminate his arrangement with 30 days' notice. Commodore provided liability insurance on the trucks and cargo. The equipment was required to be maintained to the standards of Commodore and claimant was required to report immediately to Commodore any accidents, injuries or property damage.

Claimant was injured in an accident on the highway as he was driving the truck to Roseburg in response to the dispatcher's call to pick up a mobile home for delivery. He claimed compensation under Oregon's Workmen's Compensation Law. His claim was denied. Before the first hearing defendant obtained an order from the hearing officer providing for a deposition to be taken of claimant. Claimant's attorney refused to make him available therefor unless a reasonable attorney fee was paid, which was refused and no deposition was taken.

The first determination of the hearing officer was appealed. Then a second hearing was held before the hearing officer as a result of a remand order from the Workmen's Compensation Board. After the second hearing the determinations of the hearing officer remained intact and they were affirmed in succession by the Workmen's Compensation Board and the circuit court.

■ ■ A provision of the lease agreement between claimant and Commodore provides that it "* * * shall be deemed to have been executed in * * * Nebraska and shall be governed by and construed in accordance with the laws of that State." Defendant contends that this imposes the workmen's compensation law of Nebraska upon the determination of the issues involved. Even if the quoted language can be so construed, we think this contention is untenable. First, ORS 656.027 provides that all workmen (workmen in Oregon) are subject to the Workmen's Compensation Law

"* * * except those nonsubject workmen described in the following subsections:

"* * * * *

"(5) A workman engaged in the transportation in interstate commerce of goods, persons or property for hire by rail, water, aircraft or motor vehicle, and whose employer has no fixed place of business in this state."

Employer has a fixed place of business in this state, namely, in Roseburg where Commodore's sole Oregon employe, the dispatcher, controls the distribution of the product manufactured there, and also controlled claimant and his vehicle. He is the "nerve center" for the Pacific Northwest of the Nebraska corporation.

Workmen's compensation laws do not set up simply private arrangements between employe and employer. They provide the overall social benefits deriving from a uniform workmen's compensation system. Therefore, as 3 Larson, Workmen's Compensation Law 408.41-408.42, § 87.71 (1971) states:

"* * * [T]he public has a profound interest in the matter which cannot be altered by any individual agreements. This is most obvious when such an agreement purports to destroy jurisdiction where it otherwise exists * * *." (Footnote omitted.)

Finally, ORS 656.236 (1) provides that a workman may not validly release his rights under the law.

■ ■ The facts related above as to control and practice between Commodore and claimant indicate that claimant was an employe of Commodore for purposes of the Workmen's Compensation Law.

In *Blaine v. Ross Lbr. Co., Inc.,* 224 Or 227, 235-36, 355 P2d 461 (1960), the court said:

"* * * The uncontradicted testimony shows that plaintiff owned his own truck and paid all expenses connected with its operation and main-

tenance. He could hire a driver, though apparently only with Biden's consent. The plaintiff would have to pay the salary of any driver he hired. Biden could discharge the plaintiff at will and did in fact discharge a substitute driver the plaintiff had hired while incapacitated by his injury. Biden set the hours that plaintiff worked. Biden directed plaintiff's operations at the logging site and selected the logs to be loaded. However, plaintiff could insist that the logs be properly stacked and that the total weight be kept within legal limits. Biden directed plaintiff where to take the logs. On four occasions within the four or five months preceding the accident plaintiff hauled single loads of logs for others than Biden. Log truck drivers do not receive wages but are compensated on the basis of thousands of board feet hauled.

"This court has ruled that a logging truck operator is an employee of the logger for purposes of the Workmen's Compensation Act, ORS Chapter 656, in a case where the facts were virtually identical to those stated above. *Bowser v. State Industrial Accident Commission*, 182 Or 42, 185 P2d 891 (1947)."

The facts in the case at bar are less favorable to employer's position than those in *Blaine* were. We accept the rule of the *Blaine* and *Bowser* cases as settled in Oregon.

■ ■ Defendant contends that the accident did not arise out of and in the course of employment. Defendant's dispatcher had called claimant to come to Roseburg to haul a mobile home. The lease, among many other things, gave employer "* * * exclusive possession, control and use of the Equipment * * *" and required claimant "[t]o accept commodities tendered to him by Lessee for transport * * *." Employer knew that claimant was going to live in Portland at the time the most recent renewal of the lease was

made, demonstrated by the fact that claimant's address was written into the lease as "8427 S.E. 72nd, Portland, Ore." Employer agreed to a minimum of $500 monthly rental "* * * provided that such leased vehicle * * * is available to Lessee for its use at all times * * *."

■ We think that these facts bring the journey from Portland to Roseburg under protection of the compensation law. Larson expresses applicable general rules supporting this conclusion in two ways:

> "If the trip to and from work is made in a truck * * * under the control of the employer any injury [is covered] * * *." 1 Larson, Workmen's Compensation Law 4-125, § 17.10 (1972).

> "If the employee as part of his job is required to bring with him his own * * * truck * * * for use during his working day, the trip to and from work is by that fact alone embraced within the course of employment * * *." (Footnote omitted.) 1 Larson, supra, 4-144, § 17.50.

These general rules are followed in Oregon. *See Livingston v. State Ind. Acc. Com.,* 200 Or 468, 266 P2d 684 (1954); *Casper v. SAIF,* — Or App —, 511 P2d 451 (1973); *Fenn v. Parker Construction Co.,* 6 Or App 412, 487 P2d 894 (1971).

■ ■ Defendant claims it was denied due process in that claimant's attorney refused to honor the hearing officer's order for claimant to have his deposition taken. Defendant does not point to statutory authority then existing which allowed such an order. Defendant does refer to ORS 45.181, a part of the statutory scheme for taking depositions of witnesses in cases "pending" in a court. In one place ORS 45.181 states that

> "* * * the court in which the action, suit or

proceeding is pending may make an order that the deposition shall not be taken, or that it may be taken only \* \* \*."

This proceeding was not an "action, suit or proceeding" pending before a court, rather, it was a claim pending before a workmen's compensation hearing officer, at that time. If the legislature had contemplated depositions of claimants in this posture, it would have provided authority therefor.① If employer were hampered in preparation of its case by reason of being denied knowledge about the claim, its remedy at the time in question was by way of a motion for continuance after the knowledge was obtained at the hearing, an opportunity which was specifically offered by the hearing officer.

■ ■ Claimant was entitled to attorney fees before the hearing officer upon prevailing there. ORS 656.382. *Peterson v. Compensation Department*, 257 Or 369, 375, 477 P2d 216 (1970). The hearing officer allowed compensation and $500 attorney fees after the first hearing. Claimant then proceeded under ORS 656.388 (2) to a summary hearing in the circuit court where the circuit judge raised the attorney fee from $500 to $1,000. Defendant alleges, and the record indicates, no notice was given to defendant concerning this hearing and it was not present. After defendant protested, the circuit judge held another hearing and apparently gave both sides an opportunity to be heard

---

① HB 2647 (Oregon Laws 1973, ch 652) was passed by the 1973 legislature and has been signed by the Governor. It provides:

"\* \* \* ORS 45.181 shall apply to workmen's compensation cases, except that the hearing officer shall make the determinations and orders required of the court in ORS 45.181, and in addition attorney fees shall not be declared as a matter of course but only in cases of harassment or hardship."

as well as later requesting and receiving from the hearing officer a letter in which he stated the basis for the $500 award he had allowed. The circuit judge then again awarded a $1,000 attorney fee. An appeal was taken forthwith from the order making that award and we dismissed the same, allowing defendant to raise it again in this appeal which it has done. When this claim was finally appealed on its merits to the circuit court, Judge Davis declined to rule on this issue, and it is before us pursuant to our order allowing it to be raised now. This was only one of several attorney fee awards to claimant in the protracted course of this claim. ORS 656.388 (2) provides:

> "If an attorney and the hearing officer or board cannot agree upon the amount of the fee, each forthwith shall submit a written statement of the services rendered to the presiding judge of the circuit court in the county in which the claimant resides. The judge shall, in a summary manner, without the payment of filing, trial or court fees, determine the amount of such fee. This controversy shall be given precedence over other proceedings."

■ The record we have indicates defendant's contention that initially defendant and the hearing officer were given no notice of the summary proceeding is correct. The fact that the statute provides for a summary hearing does not mean that it contemplates an elimination of due process notice requirements. Moreover, it is fundamental that an attorney provide copies of documents which he tenders a tribunal to opposing counsel. After defendant's counsel learned what had happened and protested, and when the circuit court had finally obtained the "written statement" from the hearing officer required by the statute, it had been afforded knowledge therein that a reason for the hearing officer's not having allowed more than $500 was that

claimant's attorney had walked out of the hearing before it was over. That incident occurred toward the end of the hearing (p 120 of a 130-page transcript) after the objection of claimant's attorney to an offered exhibit had been overruled. The transcript:

"THE HEARING OFFICER [Mr. Pattie]: As I recall, I overruled your objection.

"MR. O'LEARY [claimant's attorney]: Yes, you did.

"THE HEARING OFFICER: So——

"MR. O'LEARY: I don't know why he's offering it.

"THE HEARING OFFICER: But you didn't object to this, as I recall.

"MR. O'LEARY: I said there was no foundation laid.

"THE HEARING OFFICER: But you didn't say you object.

"MR. O'LEARY: I object to it on that ground. We can terminate this hearing as far as I'm concerned. You said you can give Mr. Giltner an impartial hearing. You have demonstrated you're not capable of doing that. I'm not going to participate.

"THE HEARING OFFICER: I disagree. I'm trying to get the full facts.

"MR. O'LEARY: This is not a game, Mr. Pattie, and you're playing games.

"THE HEARING OFFICER: I'm not playing games.

"MR. O'LEARY: You have been and I'll guarantee the record will so state.

"THE HEARING OFFICER: I'm trying to be fair to both sides.

"MR. O'LEARY: Your sense of what's fair is sadly lacking. Let's go."

After this exchange Mr. O'Leary and claimant walked out and the hearing officer and defendant's attorney completed the record.

It was thereafter that the hearing officer found in favor of claimant. We have read the record and find therein no excuse for counsel's conduct.

■ We have also viewed the basis for this particular award of attorney fees and conclude that there was no reason to increase it above the award allowed by the hearing officer.

The judgment of the circuit court, Judge Davis, is affirmed; the order of the circuit court, Judge Roth, setting the fees at $1,000 is reversed and the award of $500 attorney fees is reinstated.