JACK A. HOFFMAN, EMPLOYEE, PLAINTIFF v. RYDER TRUCK LINES, INC., EMPLOYER, SELF-INSURED, DEFENDANT

No. 89PA82

(Filed 3 August 1982)

**Master and Servant § 50— workers' compensation—injury repairing truck leased to defendant—compensable**

In a workers' compensation proceeding where plaintiff received an injury while repairing a truck he both leased to defendant and drove for defendant, the injury was compensable as arising out of and in the course of his employment since plaintiff was performing a necessary repair after he was "under load" and since the repair was an act preparatory or incidental to the fulfillment of his duty to make a scheduled delivery within an allotted time.

Justice MARTIN took no part in the consideration or decision of this case.

APPEAL by plaintiff pursuant to G.S. 7A-31 for discretionary review of the decision of the Court of Appeals (*Judge Arnold*, with *Judges Clark* and *Becton* concurring) reported at 54 N.C. App. 643, 284 S.E. 2d 181 (1981). The Court of Appeals reversed the opinion and award of the Industrial Commission which had ruled that plaintiff's accidental injury was covered by the provisions of the Workers' Compensation Act.

The general factual background of this case is as follows. Plaintiff was employed as a truck driver for defendant. Plaintiff drove his own truck, which defendant leased from him on a term

basis. It was plaintiff's responsibility to perform and pay for all repair and maintenance work on his truck. Plaintiff was injured as he attempted to repair his truck at home. At the time of the accident, the truck contained a load of freight which was to be delivered by plaintiff to a distant, interstate destination for defendant. A hearing was later held before the Industrial Commission to determine whether plaintiff's injury arose out of and in the course of his employment with defendant in light of the parties' contractual leasing arrangement.

The specific facts necessary for a clear understanding of the legal controversy are best gleaned from the subsequent opinion and award entered in plaintiff's favor by Commissioner Vance on 18 July 1980, which we quote in pertinent part:

### FINDINGS OF FACT

1. Plaintiff had worked for defendant employer since June of 1976 by leasing a 1972 tractor and a 1973 trailer that he owned to defendant employer. (The lease called for plaintiff to receive 76 per cent of the amount paid for transporting a load of freight. Of this, 33 per cent was for the tractor, 13 per cent for the trailer and 26 per cent for the driver.)

2. The driver was covered by workers' compensation and was paid for by defendant employer and covered as long as he was under load. Plaintiff was responsible for maintenance of the equipment at his expense either by himself or having someone else do it under the lease agreement. Driver filled out a daily log showing when on a trip, when off-duty and repairing truck. The defendant employer required that the equipment be inspected between the 1st and 10th of each month. Plaintiff usually did maintenance work on his equipment between trips.

3. On Tuesday, October 31, 1978, plaintiff picked up a load of overhead cranes in Greenville, South Carolina to be delivered in Illinois. He entered in his log book that he had picked up the load. The load was to be delivered at his destination on Monday morning, November 6, 1978 between 7 and 9 a.m. He called his wife to tell her of the trip and she requested that he come by home and be there for the baby's birthday. After notifying defendant employer, he came by his home in Connelly Springs, North Carolina.

4. Some place between Greenville, South Carolina and Connelly Springs, North Carolina, plaintiff noticed a vibration. When he arrived at home, in his best judgment, he felt the truck would not have gone more than 150 more miles before the universal joint would have completely gone out.

5. It was a normal thing for plaintiff to pick up a load at one location and come by home before continuing on the last leg of the trip on a later date.

6. Plaintiff's truck remained at his home from November 1, 1978 to Saturday, November 4, 1978, loaded. At 11 a.m. on November 4, plaintiff purchased two universal joints. At 3:30 p.m. on the same date, he began working on the truck to repair the universal joints and do a pre-trip inspection as required on the truck for the trip. He planned to leave at 5 p.m. on November 4, 1978 in order to make delivery on the morning of November 6, 1978 as scheduled. When delivery was required early on Monday morning and there was more than 500 miles to drive, he made it a practice to leave on Saturday. From Connelly Springs, North Carolina to his final destination was well over 500 miles.

7. Plaintiff was using a 4-pound sledge hammer. He was resting on his knees knocking upward from an angle to remove the universal joints. After four or five licks, a sliver of steel one-sixteenth inch wide by one-quarter inch long flew off and hit his right eye. He was taken to the Glenn R. Frye Hospital by his wife within ten minutes.

8. Plaintiff was out of work from November 4, 1978 to May 2, 1979 when released.

9. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer on November 4, 1978.

. . . .

The above findings of fact and conclusions of law engender the following additional

CONCLUSIONS OF LAW

On November 4, 1978, plaintiff sustained an injury by accident arising out of and in the course of his employment

with defendant employer. "Preliminary preparations by an employee, reasonably essential to the proper performance of some required task or service, is generally regarded as being within the scope of employment and any injury suffered while in the act of preparing to do a job is compensable." Blair, *Workmen's Compensation Law* Sec. 9:32 (1974) . . . . G.S. 97-2(6); THOMPSON v. TRANSPORT CO., 32 N.C. App. 693.

Record at 4-6 [Defendant excepted to findings of fact nos. 1 and 9 and the conclusion of law.]

On defendant's administrative appeal, the Full Commission affirmed the compensation award. On defendant's further appeal, the Court of Appeals reversed the Industrial Commission and held that plaintiff was performing the duty of an *independent contractor* as he repaired his truck pursuant to an obligation under the lease agreement and that the injury was not covered by the Workers' Compensation Act since it did not occur in the scope of his employment as a *driver* for defendant. 54 N.C. App. at 646, 284 S.E. 2d at 183. Plaintiff appeals to this Court for reinstatement of the Commission's opinion and award.

*Byrd, Byrd, Ervin, Blanton, Whisnant & McMahon, by C. Scott Whisnant, for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes & Davis, by Russell P. Brannon and Albert Sneed, Jr., for defendant-appellee.*

COPELAND, Justice.

It is axiomatic that an opinion and award entered by the Industrial Commission may not be disturbed on appeal unless a patent error of law exists therein. *See* G.S. 97-86; *Godley v. County of Pitt,* and cases there cited, 306 N.C. 357, 293 S.E. 2d 807 (1982). In the instant case, our review is directed toward the resolution of a single issue: whether the Commission erred as a matter of law in finding and concluding that plaintiff's injury arose out of and occurred in the course of his employment as a truck driver for defendant. We disagree with the Court of Appeals and hold that, on these particular facts, the employee-driver and owner-lessor of the truck is entitled to workers' compensation for the accidental injury sustained by him.

We begin our analysis by reciting the familiar and well settled rule that "[w]hether an injury arose out of and in the course of employment is a mixed question of law and fact, and where there is evidence to support the Commissioner's findings in this regard, we are bound by those findings." *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E. 2d 676, 678 (1980). An appellate court is, therefore, justified in upholding a compensation award if the accident is "fairly traceable to the employment as a contributing cause" or if "any reasonable relationship to employment exists." *Kiger v. Service Co.*, 260 N.C. 760, 762, 133 S.E. 2d 702, 704 (1963). In other words, compensability of a claim basically turns upon whether or not the employee was acting for the benefit of his employer "to any appreciable extent" when the accident occurred. *Guest v. Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E. 2d 596, 600 (1955). Such a determination depends largely upon the unique facts of each particular case, and, in close cases, the benefit of the doubt concerning this issue should be given to the employee in accordance with the established policy of liberal construction and application of the Workers' Compensation Act. *See Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E. 2d 577 (1976); *Harden v. Furniture Co.*, 199 N.C. 733, 155 S.E. 728 (1930). With these principles in mind, we proceed to examine the individual merits of the case presently before us.

To clarify the matter, we note at the outset that, strictly speaking, there is no question here concerning the existence of a dual relationship between plaintiff and defendant. As driver and operator of the truck in the service of the defendant-carrier, plaintiff was, like any other driver, clearly an employee who was generally protected by the provisions of our workers' compensation law. As owner-lessor and caretaker of the truck, however, he was an independent contractor with defendant who was excluded from such statutory protection. Plaintiff wore these work "hats" separately at different times and which one he wore depended entirely upon the specific nature and aim of the duties he was then performing. *See McGill v. Freight*, 245 N.C. 469, 96 S.E. 2d 438 (1957); *Newsome v. Surratt*, 237 N.C. 297, 74 S.E. 2d 732 (1953); *Hill v. Freight Carriers Corp.*, 235 N.C. 705, 71 S.E. 2d 133 (1952); *Roth v. McCord*, 232 N.C. 678, 62 S.E. 2d 64 (1950); *Smith v. Central Transport*, 51 N.C. App. 316, 276 S.E. 2d 751 (1981). In short, the actual circumstances surrounding the task undertaken by

plaintiff determined whether he was working for himself or the carrier at any given time and thus whether he was, in fact, covered under the Act. *See Hayes v. Elon College,* 224 N.C. 11, 29 S.E. 2d 137 (1944); 99 C.J.S. Workmen's Compensation § 105 (1958); *see also Suggs v. Truck Lines,* 253 N.C. 148, 116 S.E. 2d 359 (1960).

The crux of this case initially rests upon an interpretation of section eight of the parties' term leasing agreement, which undisputedly sets forth plaintiff's tasks as an independent contractor with defendant, as follows:

> OWNER shall have the duty to repair and/or accomplish all repairs and pay for the same as well as to make, provide, accomplish and pay for all costs of operation which may include but shall not be limited to the following maintenance: fuels, lubricants, tires (including changing and/or repairs), etc.; public liability and property damage insurance on the Equipment while not being operated in the service of CARRIER; payments for injury or damages to the operator, driver and helpers and to the Equipment while the Equipment is not being operated in the service of the CARRIER. . . .

The defendant-carrier essentially contends that this contractual provision *conclusively* establishes that *all* truck repairs were exclusively plaintiff's responsibility as owner-lessor and that the performance of such tasks were not included within the scope of his employment as a driver under *any* circumstances. We reject defendant's broad and all-encompassing interpretation of this clause.

Reading section eight as a whole, its logical and plain intent is to assign to the *owner-lessor* all costs and burdens associated with the *general* repair, maintenance and operation of the truck, regardless of who actually drives it for the carrier, and the duty to obtain his own liability and damage insurance to cover the vehicle *when it is not in the carrier's service.* By its terms, the clause does not exclude or affect the possible liability of the carrier for workers' compensation with respect to injuries received by an *employee-driver,* whomever he may be, as a result of his attempt to repair some part of the vehicle, and we shall not expand the applicability of the separate equipment lease beyond that for which it clearly provides. In any event, an employer would not be

permitted to escape his liability or obligations under the Act through the use of a special contract or agreement if the elements required for coverage of the injured individual would otherwise exist. G.S. 97-6; *see Watkins v. Murrow,* 253 N.C. 652, 118 S.E. 2d 5 (1961); *Brown v. Truck Lines,* 227 N.C. 299, 42 S.E. 2d 71 (1947).

Thus, the real issue in this case develops into a two-fold inquiry: (1) which "hat" was plaintiff wearing when he attempted to replace the universal joints on his truck at his home, and (2) if he was wearing the "hat" of an employee-driver, and not that of an owner-lessor and independent contractor, did this type of repair work fall within the scope of his employment? The overall circumstances of this case convince us that the Commission correctly concluded that plaintiff was indeed an employee of the carrier at the time of the accident and that his injuries arose out of and in the course of his employment.

The Commission's findings of fact nos. 2-7, to which defendant did not except and by which we are bound, are especially pertinent and persuasive in this regard. These findings are quoted in the beginning of the opinion and need not be reiterated in detail. It suffices to say that, in this record, it is undisputed that plaintiff was covered by defendant's workers' compensation insurance as an employee-driver once he was "under load" and that, after he picked up a load of freight, he was injured as he undertook the performance of a *specific* repair for the *limited* purpose of being able to complete delivery of the load already in tow. Significantly, the defendant-carrier did not contest the fact that the truck would not have been able to make the trip without replacement of the universal joints. That plaintiff attempted to make the repair at his home is not controlling for it is clear that he undertook this work and a pre-trip inspection of the vehicle on the very day of, and just prior to, his intended departure for the load's assigned destination. Considering everything in its most practical sense, the nature and goal of plaintiff's actions at the time of the accident support a conclusion that such activities were reasonably related to his employment and that he was about his employer's business to an appreciable degree, and not his own, when he was injured. *See Kiger v. Service Co., supra,* 260 N.C. 760, 133 S.E. 2d 702 (1963); *Guest v. Iron & Metal Co., supra,* 241 N.C. 448, 85 S.E. 2d 596 (1955). Thus, we cannot say, on the record before us, that the Commission erred as a matter of law in failing to conclude

that plaintiff was engaged in his contractual duties of general repair and maintenance of the truck as owner-lessor when the accident occurred, and this is true even though plaintiff ultimately bore the cost of all repairs under the lease, regardless of who performed them. *See also Harding v. Herr's Motor Express, Inc.,* 35 App. Div. 2d 883, 315 N.Y.S. 2d 693 (1970), *appeal denied,* 28 N.Y. 2d 487, 322 N.Y.S. 2d 1026 (1971), holding that the existence of an independent contractor relationship as to the maintenance of the leased truck would not necessarily bar a factual finding that plaintiff's performance of a *particular* repair was nonetheless an incident of his employment as a driver when he did such work at his home in preparation for a trip scheduled later that same day.

We hold that plaintiff's performance of a necessary repair, after he was "under load," was within the scope of his employment as a truck driver for defendant because it was an act preparatory or incidental to the fulfillment of his duty to make the scheduled delivery within the allotted time. *See* 82 Am. Jur. 2d Workmen's Compensation § 270 (1976); *see also Giltner v. Commodore Con. Carriers,* 14 Or. App. 340, 513 P. 2d 541 (1973); *Zelle v. Industrial Commission,* 100 Colo. 116, 65 P. 2d 1429 (1937). In so holding, we expressly approve of the similar reasoning utilized by the Court of Appeals to uphold a compensation award in an analogous case, involving the same kind of truck leasing agreement, in which the owner-lessor-driver was injured while he prepared his rig for a pre-trip inspection required by the carrier. *Thompson v. Transport Co.,* 32 N.C. App. 693, 236 S.E. 2d 312 (1977). We note that defendant, as well as the Court of Appeals, attempts to distinguish *Thompson* from the situation at bar on the basis that the inspection work done there was an express condition of plaintiff's employment as a driver. Such a distinction is a specious one at best in light of our overall analysis of the unique circumstances of this case, and it is plain in any event that the award of compensation in *Thompson* was, as here, based largely upon the determination that "[a]t the time of his injury plaintiff was furthering the business of his employer." 32 N.C. App. at 698, 236 S.E. 2d at 314.

In closing, we acknowledge our review of cases from other jurisdictions which defendant maintains have held to the "contrary," *i.e.,* that the owner-lessor-driver was not entitled to workers' compensation for injuries received as a result of repair

work performed upon the vehicle pursuant to the parties' leasing agreement. *Duetsch v. E. L. Murphy Trucking Co.*, 307 Minn. 271, 239 N.W. 2d 462 (1976); *Texas General Indemnity Company v. Bottom*, 365 S.W. 2d 350 (Tex. 1963). *Duetsch* and *Bottom* are readily distinguishable from the instant case since it is quite plain that, in both instances, the "repair" work performed by the plaintiff actually constituted *general* maintenance of the vehicle, and the vehicle was not "under load" at that time — indeed, the trailer compartment of the truck was not even attached thereto. These authorities are, therefore, totally unpersuasive here.

In conclusion, the facts of the case at bar sufficiently demonstrate that the injury was causally connected to plaintiff's employment and that the accident's occurrence was related to the employment in terms of time, place and circumstances; consequently, the statutory requirements for compensation were satisfied. G.S. 97-2(6); 8 Strong's N.C. Index 3d, Master and Servant § 55.4 (1977).

For the reasons stated, the decision of the Court of Appeals is reversed, and the opinion and award of the Industrial Commission is reinstated.

Reversed.

Justice MARTIN took no part in the consideration or decision of this case.