Pollock v. Reeves Bros., Inc.

---

WARREN N. POLLOCK, EMPLOYEE, AND BARBARA S. BECKWITH, WIDOW, BARBARA S. BECKWITH, GUARDIAN AD LITEM FOR MARNIE BECKWITH AND KATIE BECKWITH, MINOR CHILDREN OF PETER O. BECKWITH, DECEASED, EMPLOYEE, PLAINTIFFS v. REEVES BROTHERS, INC., EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8310IC812

(Filed 4 September 1984)

Master and Servant § 55.4— workers' compensation—personal and business use of employee's airplane—accident while maintaining airplane

An employee who owned an airplane which he maintained and kept for his personal use as well as for use when traveling for his employer was not injured by accident arising out of and in the course of his employment while he was returning from Georgia after having flown the airplane there to have new numbers painted on it even though the employer reimbursed the employee for part of the expense of maintaining the aircraft and paid for the gasoline used on the trip. Nor did the death of a second employee who had gone to Georgia to bring the first employee back to this State arise out of and in the course of his employment although he made the trip at the direction of his superior in the employer's company.

Judge WHICHARD dissenting.

APPEAL by defendants from order of North Carolina Industrial Commission entered 13 April 1983. Heard in the Court of Appeals 3 May 1984.

This appeal involves the question of whether an injury and a death are compensable under the Workers' Compensation Act. The evidence upon which the Hearing Commissioner made his decision showed that on 9 March 1982, Warren N. Pollock was a first vice-president of Reeves Brothers, Inc. and president of its Curon Division. Peter O. Beckwith was vice-president of the com-

pany. Pollock was a pilot and owned a single-engine aircraft which he used for his own purposes and for business purposes for Reeves. Pollock maintained the plane and Reeves paid him $2,500 per year plus payments for gasoline for his use of it while traveling for Reeves. Sometime prior to March 1982, Pollock purchased a twin-engine aircraft. He intended to sell his single engine aircraft and use the twin-engine plane.

Approximately two weeks before 9 March 1982, the Federal Aviation Authority assigned new numbers to the twin-engine aircraft. Pollock decided to fly the twin-engine plane to Commerce, Georgia on 9 March 1982 to have the new numbers put on the aircraft. He asked Beckwith to fly the single-engine plane to Georgia on that date with the intention that the two men would return home in it while the numbers were being put on the twin-engine plane. The gasoline used for the flight was charged to Reeves. While the two men were returning from Georgia, the single-engine plane crashed. Pollock was injured and Beckwith was killed.

The Hearing Commissioner found facts based on the above evidence. He also found what he denominated a fact that neither Pollock nor Beckwith had any business of Reeves to conduct on the trip and that neither was engaged in any function which was calculated to further either directly or indirectly Reeves' business. He found they were on a business trip connected with the maintenance of the twin-engine aircraft. He concluded that neither man sustained an injury arising out of and in the course of employment and denied compensation.

The plaintiffs appealed to the Full Commission which stated "We are of the opinion that the employees, on the occasion complained of, were engaged in an activity which they were authorized to undertake and which was calculated to indirectly benefit the employer." It substituted what it called findings of fact that neither Pollock nor Beckwith had any personal business to transact in Georgia and they were engaged in the discharge of a function which was calculated to further indirectly the business of Reeves. It concluded the two men were in accidents that arose out of and in the course of their employment. The Full Commission reversed the Hearing Commissioner and awarded compensation in both cases. The defendants appealed.

*Petree, Stockton, Robinson, Vaughn, Glaze and Maready, by W. F. Maready, Robert J. Lawing, and Michael L. Robinson, for plaintiff appellee Warren N. Pollock.*

*Lloyd C. Caudle and Richard S. Guy for plaintiff appellee Barbara S. Beckwith, individually and as Guardian Ad Litem.*

*Hedrick, Feerick, Eatman, Gardner and Kincheloe, by Philip R. Hedrick and Martha W. Surles, for defendant appellants.*

WEBB, Judge.

The facts in this case are not in dispute. The question is whether Pollock or Beckwith's heirs are entitled to workers' compensation for injuries and death in an accident that occurred while they were returning from a trip to have numbers put on an airplane which was owned by Pollock, and which he used while traveling on business for Reeves. The Hearing Commissioner's finding that neither man was engaged in any function which was calculated to further Reeves' business and the Full Commission's finding that they were so engaged were conclusions based on the undisputed facts. We hold that the Hearing Commissioner was correct in his conclusion and reverse the Full Commission.

We have not found a case which governs this case but we do not believe we should hold that when a person owns an airplane which he maintains and keeps for his personal use as well as for use when traveling for his employer, he is protected by workers' compensation while he is doing something to maintain the airplane and not doing anything else to promote the employer's business. We believe this is so although the employer reimburses him for a part of the expense of maintaining the aircraft and pays for the gasoline used on the trip. We do not believe that the Workers' Compensation Act was intended to cover accidents which occur while an employee is repairing his own property which he uses for himself and for his employer.

We receive some help from *Hoffman v. Truck Lines, Inc.,* 306 N.C. 502, 293 S.E. 2d 807 (1982). In that case, the plaintiff leased his tractor-trailer to the defendant-employer. He was injured while repairing the tractor at a time when it was stopped while on a trip for the employer. Our Supreme Court said the plaintiff wore two hats, one as lessor and one as employee. Because the in-

jury occurred while he was performing a duty as an employee, the accident was compensable. We believe an inference from this case is that if the accident had occurred while the plaintiff was not on a trip or using the truck for the employer, the accident would not have been compensable. This would be so although the repair of the truck would have been of some benefit to the employer.

We believe that for an activity of an employee to be held to be of some benefit to the employer so that an accident while engaged in that activity is compensable, it must be an activity as an employee. An accident during the repair of a truck as a lessor and not as a lessee would not have been compensable in *Hoffman*. In this case, although it may have been of some benefit to Reeves to have the correct numbers on the aircraft, we do not believe Pollock was acting as an employee in having the numbers put on the aircraft. It was his aircraft and he was doing what was necessary to maintain it for flight. This would not be a benefit to Reeves for workers' compensation purposes.

If Pollock was not promoting his employer's business, then neither was Beckwith. Although Beckwith may have made the trip at the direction of his superior at Reeves, this would not make the trip compensable because it was no more for the benefit of Reeves than was the trip by Pollock. *Burnett v. Paint Co.*, 216 N.C. 204, 4 S.E. 2d 507 (1939) and *Hales v. Construction Co.*, 5 N.C. App. 564, 169 S.E. 2d 24 (1969).

We reverse and remand for an order denying both claims.

Reversed and remanded.

Judge HILL concurs.

Judge WHICHARD dissents.

Judge WHICHARD dissenting.

Pollock testified that many of the employer's facilities were so located that it was "very, very inconvenient" to use commercial airlines, and that he flew his own airplane for that reason. He further testified: that he acquired the single-engine aircraft "so that [he] would have transportation to [his] various business con-

nections," and that he acquired the twin-engine plane "[t]o have a better airplane to fly on . . . business trips"; that there was a time limit for getting the new FAA numbers painted on the plane, although he did not know what it was; and that the new number had been assigned about two weeks prior to the trip in question. "There is no specific time limit that I know of," he stated, "but obviously if you are carrying an identification that says one number and the airplane has another number printed on it that is a kind of a problem, so we did want to get it done in due course."

Finally, and more importantly, Pollock testified that the morning of the accident "was really the only time that we could do this. We could have the airplane out of service . . .," he stated, "because we wouldn't be using it for the balance of the week." In context, the testimony implies that this was the only period during which Pollock knew the plane would not be needed for the employer's purposes, and that the morning of the accident was the only time during that period when his own business schedule permitted the trip.

The foregoing evidence indicates that Pollock purchased his planes primarily for use in the employer's business, and that while he was under no definite time constraint to get the new FAA numbers painted on the second plane, he chose the time in question because it was the only suitable time in terms of use of the plane in the employer's business. I believe that evidence thus could be held to sustain the Commission's "finding of fact" that at the time of the accident Pollock was "engaged in the discharge of a function which was calculated [to] further indirectly the employer's business."

Our Supreme Court has stated:

An appellate court is . . . justified in upholding a compensation award if the accident is "fairly traceable to the employment as a contributing cause" or if "any reasonable relationship to employment exists." (Citations omitted.) In other words, compensability . . . basically turns upon whether the employee was acting for the benefit of his employer "to any appreciable extent" when the accident occurred. (Citations omitted.) Such a determination depends largely upon the unique facts of each particular case, and in close cases, the benefit of the doubt concerning this issue should

be given to the employee in accordance with the established policy of liberal construction and application of the Workers' Compensation Act.

*Hoffman v. Truck Lines, Inc.,* 306 N.C. 502, 506, 293 S.E. 2d 807, 810 (1982). I consider the case, as to Pollock, extremely close. In light of the evidence set forth above, however, and of the Supreme Court's directive to give the employee the benefit of the doubt in close cases, I would affirm the award.

Even if Pollock were not engaged in promoting the employer's interests, however, it does not necessarily follow that Beckwith was not. Pollock was Beckwith's superior in the company. He directed that Beckwith make the trip.[1] Beckwith had flown the single-engine aircraft on business trips several times as the pilot in command. He had also flown with Pollock on business trips to the employer's facilities. Beckwith, therefore, presumably knew that the employer had authorized use of Pollock's planes for corporate purposes. Pollock clearly had at least apparent authority to direct or request that Beckwith accompany him on a trip relating to the flight readiness of a plane which Beckwith presumably knew would be used for corporate purposes. In these circumstances Beckwith should not be compelled to determine, at his peril, whether the requested activity would place him beyond the ambit of the Workers' Compensation Act.

Pollock was engaged in the task, arguably personal, of obtaining new identification numbers for his plane. He had discretion to determine whether to perform this task within or without the employer's working hours. He was not aware of any deadline for securing the new numbers. Beckwith, however, at the direction of his superior, was engaged in the task of securing the return of the superior to the employer's place of business so that the superior could perform tasks which, for corporate purposes, needed to be performed that day. He could have performed this task only at the time in question; and his performance at that time, because designed to insure the presence of his superior to perform corporate tasks in a timely manner, did have some "reasonable relationship" to the employment and was intended to

---

1. Pollock was asked at the hearing, "Did you direct [Beckwith] to plan for and to make this trip . . . with you?" He responded, "Yes, I guess you would have to say I did."

benefit the employer to some "appreciable extent." *See Hoffman, supra.* The circumstances of the two employees, and the tasks in which they were engaged, thus properly may be regarded as different.

The following principles set forth by Judge (later Justice) Britt should control the decision here as to the award to Beckwith's dependents:

> To be compensable an accident must arise out of the course and scope of employment. (Citation omitted.) Where the fruit of certain labor accrues either directly or indirectly to the benefit of an employer, employees injured in the course of such work are entitled to compensation under the Work[er's] Compensation Act. (Citations omitted.)

> This result obtains especially where an employee is called to action by some person superior in authority to him . . . . It appears clear that when a superior directs a subordinate employee to go on an errand or to perform some duty beyond his normal duties, the scope of the Work[er's] Compensation Act expands to encompass injuries sustained in the course of such labor. (Citations omitted.) . . .

> The order or request need not be couched in the imperative. It is sufficient for compensation purposes that the suggestion, request or even the employee's mere perception of what is expected of him under his job classification, serves to motivate undertaking an injury producing activity. So long as ordered to perform by a superior, acts beneficial to the employer which result in injury to performing employees are within the ambit of the act. (Citations omitted.)

*Stewart v. Dept. of Corrections,* 29 N.C. App. 735, 737-38, 225 S.E. 2d 336, 338 (1976). *See also* 1A, A. Larson, Law of Workmen's Compensation Sec. 27.40 (1983) ("When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.")

I vote to affirm the award to Beckwith's dependents because I believe the foregoing principles, applied to the facts of this case, make it entirely proper. I vote to affirm the award to Pollock

because, while of somewhat dubious propriety, I regard it as permissible in light of the directive to give the employee the benefit of the doubt.