An owner/lessor of a truck leased to an Interstate Commerce Commission (I.C.C.) licensee for use under that license in interstate commerce is an employer of any third party driver of the truck due to actual control over that driver. In most instances today, the owner/lessor also drives his truck. As between these parties, the owner/operator/lessor of the truck is an independent contractor in contractual dealings with the I.C.C. licensee/lessee concerning matters other than driving — and thus their contract can require the driver/lessor to purchase his own workers' compensation coverage without offending N.C.G.S. § 97-21. See, N.C.G.S. § 97-51. But for public policy reasons, the I.C.C. licensee/lessee is an employer of any driver operating under its license, including the owner/operator. Watkins v. Murrow,253 N.C. 652, 658-59, 118 S.E.2d 5 (1961). Our Court of Appeals has made clear that when such a owner/operator/lessor is injured, and the compensation liability of the lessee/carrier firm is in issue, all other aspects of the parties' relationship are ignored, and the focus should be simply whether the activity in which the claimant was engaged was in the course and scope of his employment as a driver. In light of our case law, we believe our Courts would see the present injury to be work-related. See, e.g., Thompson v.Refrigerated Transp. Co., 32 N.C. App. 693, 697, 236 S.E.2d 312
(1977).
As the disposition of this case is determined without reaching plaintiff's cross appeal, and no North Carolina decisions on this interplay of Federal and State law are cited, we do not address this issue.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS from the Opinion and Award of the Deputy Commissioner the following:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the time in question, an employee-employer relationship existed between plaintiff and defendant at all times relevant thereto, including September 15, 1992, the date of the accident in question. (This stipulation is without prejudice to the right of the defendant to contest whether the plaintiff was acting in the capacity of an employee of the defendant at the time of the automobile accident in question.)
3. At that time, defendant was a duly qualified self-insured, with Association Risk Management Service Company being the servicing agent.
4. Defendant carried license tags on plaintiff's truck in its name and license tags were paid for under the terms of the operating contract, from the date of plaintiff's employment up and through the date of the accident in question.
5. Plaintiff worked exclusively for defendant from the date of signature of the operating contract, from the date of his employment up through and including September 15, 1992, the date of the alleged injury by accident herein.
6. At the time of the accident giving rise to this claim, plaintiff was en route to pick up a part for repair of his truck that was leased to defendant.
* * * * * * * * * * *
Based upon the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff is a 63-year-old married male with an eighth grade education.
2. Plaintiff enlisted in the United States Navy at an early age and in 1949 become engaged in the vocation of a long haul truck driver.
3. Beginning February 23, 1989 and up through the date of the alleged injury by accident of September 15, 1992, plaintiff was working exclusively for defendant as a long haul truck driver carrying freight.
4. As of the date of the alleged injury by accident, September 15, 1992, plaintiff and defendant were functioning under an operating contract, which required plaintiff to comply with the rules and regulations for operating an interstate motor carrier as published by the Federal Highway Administration of the United States Department of Transportation.
5. Defendant, Southwestern Freight Carriers, was and is an interstate motor carrier engaged in interstate commerce.
6. On September 14, 1992, plaintiff began his on-duty time in the town of Duluth, Georgia at 7:30 a.m., where he off-loaded freight which he had just hauled from California.
7. Later, on the morning of September 14, 1992, plaintiff drove his truck on behalf of defendant to the town of Anderson, South Carolina, where his truck was loaded with freight. Plaintiff realized at this time, however, that there was something wrong with his truck which would require him to have it repaired before he could continue with the haul.
8. From Anderson, South Carolina, plaintiff made a telephone contact with a dispatcher for defendant who directed him to bring the load to the Southwestern Terminal located in Rutherfordton, North Carolina until he could get his truck repaired and so that another driver could finish delivering the load to California. At this time, the dispatcher further indicated, on behalf of defendant, that he would have plaintiff another load ready to pull to California just as soon as the truck was repaired.
9. Plaintiff drove from Anderson to Greer, South Carolina arriving in time to eat lunch with his wife in Taylors, a suburb of Greer. He then proceeded to the Southwestern terminal where he dropped off the loaded trailer.
10. Plaintiff purchased a wheel to replace his cracked wheel at the terminal. Plaintiff did not install the wheel at that time.
11. From the terminal plaintiff drove to his home where he spent the night. Plaintiff went off duty at 4:30 p.m.
12. On the morning of September 15, 1992, plaintiff began his day on duty with defendant at 9:00 a.m. with an inspection of his truck. He then went to Goodyear Commercial Tire and Service Center in Greer, where he had the wheel installed on his truck. In addition, plaintiff had some wheel studs repaired. A mechanic a Goodyear advised plaintiff that the central bolt was broken on the spring on his front tandem on the left and that additional repairs were necessary.
13. Plaintiff elected to have B B Diesel Service, also of Greer, perform the repairs because of a backlog of customers at Goodyear. The necessary part to repair plaintiff truck was not available at B B Diesel, but the mechanic there instructed plaintiff that if he would drive to the Peterbilt Truck parts facility in Greenville, South Carolina to retrieve a replacement bolt, he would begin disassembling the suspension on the truck for the purpose of installing the new bolt that plaintiff was going to purchase.
14. Plaintiff called his wife from B B Diesel and asked her to bring their personal van to his so he could travel to the Peterbilt Truck parts facility. Plaintiff then took his wife home and proceeded to the parts place on I-85.
15. Plaintiff was involved in an accident on I-85 when an oncoming car crossed the median and struck plaintiff's van. The accident caused severe injuries, and extended hospitalization.
16. The sole purpose for plaintiff to be on I-85 was to retrieve the part to repair his truck.
17. Defendant was going to make another load of freight available to plaintiff for a trip during the week of September 14, 1992, as soon as plaintiff's truck repairs were complete. Plaintiff was pursuing those repairs as expeditiously as possible. The repairs were necessary under the Federal regulations as a condition precedent to being able to be formally dispatched and actually leave on a trip.
18. The special errand on which plaintiff was engaged at the time of the accident was fairly traceable to his employment with defendant and of appreciable benefit to defendant. Defendant was the only carrier for which plaintiff hauled freight.
19. Plaintiff was in the role of defendant's employee when the accident occurred on September 15, 1992.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. At the time of his injury by accident on September 15, 1992, while plaintiff was driving to pick up a repair part for his truck, plaintiff was in the course and scope of his employment with the defendant. N.C.G.S. §§ 97-2 (2) and 97-2 (6); See Hoffmanv. Truck Lines, 306 N.C. 502, 293 S.E.2d 807 (1982); Thompson v.Transport Co., 32 N.C. App. 693, 236 S.E.2d 312 (1977); Church v.G.G. Parson's Trucking Co., 62 N.C. App. 121, 203 S.E.2d 295
(1983).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. The Deputy Commissioner's opinion is AFFIRMED.
2. The parties shall submit to the undersigned agreements for the payment of compensation, or a pretrial order listing proposed witnesses and exhibits necessary for determination of benefits due, within 30 days of receipt of this opinion.
3. Defendant shall pay the costs.
 S/ _______________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________________ COY M. VANCE COMMISSIONER
S/ _______________________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/rch