***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, plaintiff was an owner-driver for defendant-employer.
3. On October 7, 1998, plaintiff suffered an injury by accident while driving a truck he owned and leased to defendant-employer. The truck was hauling a trailer owned by defendant-employer. Plaintiff was injured in Columbus County, North Carolina when a vehicle driven by Mable Stephens ran a stop sign and crashed into the vehicle operated by plaintiff. Plaintiff sustained injuries to his neck, back, and right hip.
4. Reliance National Indemnity was the carrier on risk with respect to time of the accident. Reliance National Indemnity has declared bankruptcy and the claim was assumed by the North Carolina Guaranty Association. Cambridge Integrated Services is the Third Party Administrator for the Guaranty Association.
5. Plaintiff's average weekly wage was $850.00 yielding the maximum compensation rate of $532.00 per week for the year 1998.
6. Plaintiff's medical records were stipulated into evidence as a section of Stipulated Exhibit 1.
7. Pleadings relating to this case were stipulated into evidence as a section of Stipulated Exhibit 1.
8. The issues before the Full Commission are: (i) whether an employment relationship existed between plaintiff and defendant-employer at the time of the accident; (ii) if so, what compensation, if any, is due plaintiff; (iii) whether plaintiff's claim was filed in a timely manner; and (iv) whether attorneys fees are appropriate for unreasonable defenses?
9. The depositions of Randy L. Adams and Dr. Larry A. Schulhof are a part of the evidentiary record in this case.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was sixty-two (62) years old. Plaintiff completed the tenth grade and subsequently obtained a GED. Plaintiff is married and has three adult children. Plaintiff's employment history includes service with the Army National Guard from 1957 to 1959 and many years of long distance truck driving.
2. Central Transport is a trucking business that employs more than 500 individuals and hauls industrial chemicals and bulk materials throughout the United States.
3. Plaintiff began his employment with Central Transport as a long distance truck driver in 1971. Plaintiff drove exclusively for Central Transport from 1971 until 1981. In 1981, Gary Honbarrier, owner of Central Transport, encouraged plaintiff to buy his own truck and lease it back to Central Transport. Central Transport employs lease operators throughout the company to keep down capital and overhead expenses. Central Transport benefits when the drivers purchase their own trucks and leases them back to Central Transport.
4. From 1981 until the time of the accident, plaintiff leased his truck to Central Transport pursuant to a contract for lease.
5. When plaintiff's truck was being repaired, plaintiff would drive trucks owned by Central Transport. Central Transport would assign plaintiff jobs where loads need to be moved and plaintiff would also drive company trucks sometimes when performing this work. At the time of plaintiff's injury by accident on October 7, 1998, plaintiff was a lease operator.
6. Plaintiff drove under Central Transport's Interstate Commerce Commission number and authority. This was an exclusive arrangement and plaintiff was required only to haul for Central Transport.
7. Plaintiff purchased occupational insurance through Central Transport and understood this insurance carried a workers' compensation umbrella. It was only after plaintiff's injury by accident that plaintiff learned he was not covered by workers' compensation insurance.
8. At the time of the injury by accident, plaintiff was pulling a stainless steel trailer owned by Central Transport and used to haul industrial chemicals. This trailer was valued at $50,000.00 and plaintiff was issued a card by Central Transport that assisted him in obtaining fuel on the road.
9. Plaintiff was given a drivers manual that consisted of 190 pages of instructions and directions. Plaintiff was expected to comply with these instructions and directions while working for Central Transport.
10. Plaintiff was expected to attend safety meetings at the Phoenix Inn in Greenville, South Carolina, his home terminal from which he was dispatched, when he was not on the road. The driver's handbook was discussed at these safety meetings. These safety meetings were led by Central Transport's safety director and plaintiff was paid to attend these meetings.
11. Plaintiff was required to submit to a pre-trip inspection of the tractor-trailer. Central Transport also paid to install the Rockwell Satellite dispatch system in plaintiff's truck and required him to reimburse Central Transport out of his earnings.
12. Plaintiff was dispatched by Central Transport and told where to go and what to deliver when he arrived.
13. Central Transport required plaintiff to wear a Central Transport shirt, a Central Transport cap, and a hard hat with the Central Transport emblem on it when he was working.
14. Central Transport has given plaintiff a plaque for being the driver of the year in 1986 and belt buckles in recognition of safe driving, a watch for five years of safe driving, a diamond ring for safe driving, and more than twenty safe driving pins.
15. Central Transport required plaintiff to keep certain documentation in his truck at all times. This documentation consisted of permits from the federal government, permits from the State of North Carolina, and permits from other states including California, Iowa and Ohio.
16. Len Fletcher, Central Transport's general manager and senior vice-president indicated Central Transport employed lease operators throughout the country to keep down the amount of capital they had to invest on equipment. Mr. Fletcher indicated Central Transport's employees included ninety lease operators.
17. Central Transport exercised all possession, control, and use of the trucks that were leased to them by the lease operators.
18. On October 7, 1998, plaintiff was operating under an agreement by which Central Transport was licensed to transport goods by truck in interstate commerce, leased the truck from plaintiff who was not so licensed, and attached its interstate commerce number to plaintiff's vehicle in order to engage in transporting goods in interstate commerce.
19. Central Transport maintained sufficient control over plaintiff and the tasks which he was conducting in order to constitute an employment relationship.
20. On October 7, 1998, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer and suffered compensable injuries to his back, neck and hips as result of an automobile accident.
21. Plaintiff has sustained other injuries while working for defendant-employer. In 1971 and again in 1995 plaintiff slipped and fell from the tractor-trailer striking his neck on the chassis of the truck. After the injury in 1995, plaintiff had surgeries in 1995 and 1996. Plaintiff was under the care of Dr. Schulhof after these surgeries.
22. On October 7, 1998, plaintiff was driving a truck and trailer for defendant-employer when a third party struck him when he was traveling east on Highway 74 between Whiteville and Chadbourn, North Carolina.
23. Plaintiff received medical treatment at the emergency room in Whiteville, North Carolina. Dr. Schulhof gave plaintiff a disability certificate on December 4, 1998 indicating plaintiff's severe neck and low back pain permitted him from being able to work.
24. Plaintiff had been released to return to work by Dr. Schulhof at the time of his injury by accident.
25. After the injury by accident, plaintiff returned to Dr. Schulhof for continued treatment and was referred to physical therapy and for epidural steroid injections. Dr. Schulhof indicated in March 1999 that plaintiff could return to work at a desk job or clerical work.
26. In Dr. Schulhof's last medical note dated August 2, 1999, Dr. Schulhof indicated plaintiff's condition had become worse and that he could perform an ACDF with plate replacement at C4-5 level.
27. On May 13, 1999, plaintiff received a second opinion from Stewart J. Harley, M.D. Dr. Harley noted plaintiff's neck bothered him more than his lower back and plaintiff experienced pain extending to the right shoulder area and right arm and forearm. Plaintiff was experiencing difficulty sleeping at night as result of the pain.
28. After having plaintiff tested and evaluated, Dr. Harley indicated plaintiff was having low back pain and changes of mild degenerative disk disease at L3-4 and L4-5.
29. Plaintiff had indicated to Dr. Schulhof and Dr. Harley he wished to avoid surgery if at all possible.
30. Plaintiff reached maximum medical improvement from his injury by accident on October 7, 1999 and the exacerbation of his pre-existing conditions as a result of his injury by accident on June 10, 1999. Plaintiff has a three (3%) percent permanent partial impairment to his low back and a five (5%) percent permanent partial impairment to his cervical spine.
31. Plaintiff continues to have significant pain in his neck, right arm, hips and back.
32. Plaintiff has difficulty walking on concrete for an extended period of time without resting. Plaintiff treats his pain with over the counter pain relievers and lies down each afternoon and occasionally in the morning.
33. Defendant-employer has never returned plaintiff to work after his injury by accident.
34. After plaintiff's injury by accident, plaintiff unsuccessfully attempted to return to work as a truck driver because the pain was too great.
35. Plaintiff attempted to use his knowledge of the trucking industry by working for his brother in truck/trailer sales in Charlotte. Plaintiff continued to experience significant pain that prohibited him from being able to be productive in this work.
36. Based upon plaintiff's educational background, work experience, and his physical condition, plaintiff is disabled from any type of substantial gainful employment at this time.
37. Plaintiff made defendant-employer aware of his accident on October 7, 1998 through a satellite distress transmission.
38. On October 2, 2000, plaintiff filed a Form 18 indicating he was seeking appropriate benefits under the North Carolina Workers' Compensation Act for the injuries he sustained as result of his October 7, 1998 injury by accident.
39. Plaintiff's claim for workers' compensation benefits arising out of his injury by accident on October 7, 1998 was filed in a timely fashion.
40. Defendants have not defended this action without merit.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on October 7, 1998. N.C.G.S. § 97-2(6); Brown v. Truck Lines, 227 N.C. 299, 42 S.E.2d 71
(1947).
2. The greater weight of the evidence indicates at the time of plaintiff's injury by accident he was acting as an employee for defendant-employer. N.C.G.S. § 97-6; Hoffman v. Truck Lines, Inc.,306 N.C. 502, 293 S.E.2d 807 (1982).
3. Defendant-employer was exercising sufficient control of plaintiff's duties and equipment to constitute an employment relationship on October 7, 1998. N.C.G.S. § 97-2(2); Hoffman v. Truck Lines, Inc.,306 N.C. 502, 293 S.E.2d 807 (1982); Brown v. Truck Lines, 227 N.C. 299,42 S.E.2d 71 (1947); Smith v. Central Transport, 51 N.C. App. 316,276 S.E.2d 751 (1981).
4. Plaintiff is entitled to receive all medical treatment relating to his compensable injury by accident on October 7, 1998 so long as such treatment is necessary to effect a cure, give relief, or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
5. Plaintiff's injury aggravated or accelerated plaintiff's pre-existing condition, low back and cervical spine conditions. N.C.G.S. § 97-2.
6. As result of plaintiff's injury by accident and the aggravation or acceleration of his pre-existing conditions, plaintiff has been totally disabled and entitled to ongoing total disability compensation since October 7, 1998. N.C.G.S. § 97-29; Whitley v. Columbia LumberManufacturing Co., 318 N.C. 89, 348 S.E.2d 336 (1986).
7. As result of plaintiff's compensable injury by accident, plaintiff sustained an eight (8%) percent permanent partial disability to his spine. N.C.G.S. § 97-31.
8. Plaintiff's claim for benefits arising out of his injury by accident on October 7, 1998 was reported in a timely manner. N.C.G.S. §§ 97-22;97-24.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff ongoing total disability compensation at the rate of $532.00 per week from October 7, 1998 and continuing until further order of the Commission. Said amount shall be paid in a lump sum subject to an attorney's fee for plaintiff's counsel approved in Paragraph 3.
2. Defendants shall pay all medical expenses resulting from plaintiff's injury by accident and aggravation and acceleration of his pre-existing conditions.
3. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. In regards to future compensation, plaintiff's counsel shall receive the equivalent of every fourth check.
4. Defendants shall pay the costs.
This the ___ day of June 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER