Argued and submitted October 13, 1980,
affirmed March 30, 1981

# SEATTLE-FIRST NATIONAL BANK,
*Appellant - Cross-Respondent.*

*v.*

# SCHRIBER et al,
*Respondents - Cross-Appellants.*

(No. 7604-05594, CA 15705)

625 P2d 1370

Charles Robinowitz, Portland, argued the cause and filed the briefs for appellant - cross-respondents.

Norman Wapnick, Portland, argued the cause for respondents - cross-appellants. With him on the brief were Jeffrey R. Spere and Sussman, Shank, Wapnick, Caplan & Stiles, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff appeals from a judgment in favor of defendants based on the statute of limitations. The trial court concluded that a note made by defendant Ronald W. Schriber, payable to plaintiff, was a demand note and, therefore, plaintiff's cause of action was barred by the statute of limitations because it accrued on December 16, 1969, one day after the date of the note and more than six years before plaintiff filed its complaint.[1] Defendants cross-appeal, contending that the trial court erred in applying Washington law and thereby denying defendants' right to recover attorney's fees as the prevailing parties.

The trial court made the following findings of fact:[2]

"1.   Plaintiff was and is a national banking association authorized to do business in the State of Washington.

"2.   On or about December 15, 1969, Ronald W. Schriber signed a promissory note in the amount of $40,000, with interest at 9 1/2% per annum, payable to plaintiff. The terms of this note were 'on demand, but no later than 180 days after date'.

"3.   At the time Ronald W. Schriber signed the note, he and Peggy L. Schriber were husband and wife and were living in the State of California.

"4.   Ronald W. Schriber signed the note within the State of California and mailed it to the Bank in Washington.

"5.   The defendants have made no payments on this note.

"6.   Bank personnel typed the due date of June 13, 1970 on the top of this note, after receipt of the note from Mr. Schriber.

---

[1] ORS 73.1220(1)(b) provides:

"(1) A cause of action against a maker or an acceptor accrues:

" * * * * *

"(b) In the case of a demand instrument upon its date or, if no date is stated, on the date of issue."

[2] The note is reproduced in *Seattle-First National Bank v. Schriber,* 282 Or 625, 628, 580 P2d 1012 (1978). In that previous appeal on this matter, the Supreme Court held that the note was not as a matter of law a demand note. Whether it was a demand note, therefore, was a matter of fact to be determined on remand by the trial court.

"7. This $40,000 promissory note was a renewal note of $50,000 dated April 18, 1969, signed by Ronald W. Schriber at a time when he was living within the State of Oregon.

"8. All monies received by Mr. Schriber pursuant to the note of April 18, 1969, were invested in the business in which Mr. Schriber was a minority stockholder. No additional funds were paid to Mr. Schriber upon execution of the note of December 15, 1969.

"9. The Bank had a right to demand payment on the note of December 15, 1969 at any time within its discretion on or after December 16, 1979, [sic] and this was the intent of the parties when the bank personnel prepared the note and Mr. Schriber signed it.

"10. The Bank made no demand for payment of the note prior to June 13, 1970.

"11. The Bank filed a complaint in this case on or about April 21, 1976."

■  The trial court found that the parties intended that the note be payable on demand. The court also found that the alleged "due date" was typed in by the plaintiff after the note was executed by the defendant Ronald W. Schriber. These findings preclude the conclusion that the note had a "due date," as plaintiff alleges. There is sufficient evidence in the record to support the trial court's finding as to the parties' intent and, therefore, we will not disturb it on appeal. *Lokan v. Roberts,* 270 Or 349, 353, 527 P2d 720 (1974); *Cronn v. Fisher,* 245 Or 407, 415, 422 P2d 276 (1966).

We turn now to defendant's cross-appeal. The note provides that " * * * in case suit is instituted to collect the same or any portion thereof * * * " that defendants will pay "such additional sum as the court may adjudge reasonable, as attorney's fees in such suit * * * ." According to ORS 20.096[3] attorney's fees are recoverable by the prevailing party where the contract provided that one of the parties

---

[3] Former ORS 20.096(1) provides:

"In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements."

would be entitled to attorney's fees. ORS 20.096 has been construed to apply retroactively. *Dean Vincent, Inc. v. Chamberlain,* 264 Or 187, 504 P2d 722 (1972). Under Oregon law, therefore, defendants would be allowed to recover attorney's fees even though the agreement was entered into on December 15, 1969, and ORS 20.096 became effective on September 9, 1971. Washington law, RCW 4.84.330,[4] also provides that the prevailing party may recover attorney's fees under a contract like this one. However, RCW 4.84.330 specifies that this provision applies only to contracts entered into "after September 21, 1977."[5] If Washington law applies, defendants may not recover attorney's fees.

The trial court indicated in its opinion that it applied the Restatement (Second) of Conflict of Laws § § 6, 188 (1971) to this problem.[6] Before applying the Restatement analysis, the trial court concluded:

---

[4] RCW 4.84.330 provides:

"In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."

[5] Defendants do not contend that the Washington law is retroactive.

[6] Restatement (Second) of Conflict of Laws, § 6, provides:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

Restatement (Second) Conflict of Law, § 188 provides:

"(1) The rights and duties of the parties with repsect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

" * * * that Oregon does have a reasonable connection with the transaction by reason of the defendant now having his domicile here. Thus, there is a true conflict between the interests of Oregon and Washington and it is now necessary to further analyze those interests."

After analyzing these interests, the trial court concluded that Washington had a more substantial relationship and applied RCW 4.84.330, denying defendants' attorney's fees.

Defendants argue that Oregon law should apply for two reasons. First, ORS 20.096 is merely procedural and, therefore, the law of the forum, i.e., Oregon law, should apply. Second, even if Washington were to have more and closer contacts with this transaction, public policy expressed in ORS 20.096 is so important that Oregon law should be applied.

We agree with defendants that Oregon's law would apply if the issue of attorney's fees is procedural. "Matters of remedy, [i.e.] procedure, are governed by the law of the forum." *Lilienthal v. Kaufman,* 239 Or 1, 6, 395 P2d 543 (1964). This is reiterated in Restatement (Second) of Conflict of Laws, § 122 (1971).

"A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies local law rules of another state to resolve other issues in the case."

The Restatement's Comment a. to § 122, at page 351 explains:

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203."

"Enormous burdens are avoided when a court applies its own rules, rather than the rules of another state, to issues relating to judicial administration, such as the proper form of action, service of process, pleading, rules of discovery, mode of trial and execution and costs."

Defendants rely on *Parks v. Smith,* 95 Or 300, 186 P 552, 554 (1920), and *Bank of Ogden v. Davidson,* 18 Or 57, 22 P 517 (1889), in contending that awarding attorney's fees pursuant to ORS 20.096 is procedural. In *Bank of Ogden,* the Supreme Court declared that Oregon would not enforce an agreement to pay a fixed percentage of the debt as costs of collection as agreed to by the parties to a note, because it was against Oregon's public policy to permit parties to agree to any sum other than what "the court may adjudge reasonable as attorney's fees." In discussing the conflict of laws issue, the court went on to say:

"As a general rule, the law of the place where contracts merely personal are made, governs as to their nature, obligation and construction. But I do not think that rule applies to an agreement, the obligation of which does not arise until a remedy is sought upon the contract, to which it is only auxiliary." 18 Or at 70.

This is echoed in *Parks* in which the court cited *Bank of Ogden* and held that an agreement to pay a fixed amount as attorney's fees contained in a note would not be enforced in Oregon as "[t]he statute of California [which would allow such an agreement to be enforced] does not change the procedure in a suit to foreclose a mortgage in this state." *Parks v. Smith, supra,* 95 Or at 305.

Neither of those cases dealt with attorney's fees being awarded pursuant to ORS 20.096, the issue in the case at hand. Moreover, the outcome in each case seems to have been more a result of the court's abhorrence of predetermined attorney's fees than the result of consideration of the procedural/substantive law dichotomy. We need not blindly apply this old classification of attorney's fees as "procedural." The Restatement in Comment b., following § 122 says at 352:

"The courts have traditionally approached issues falling within the scope of the rule of this Section by determining whether the particular issue was 'procedural' and *therefore* to be decided in accordance with the forum's local law rule or 'substantive' and *therefore* to be decided by

reference to the otherwise applicable law. These characterizations, while harmless in themselves, have led some courts into unthinking adherence to precedents that have classified a given issue as 'procedural' or 'substantive', regardless of what purposes were involved in the earlier classifications." (Emphasis in original)

■        The nature of attorney's fees to be awarded pursuant to ORS 20.096 is addressed in *Gorman v. Boyer,* 274 Or 467, 547 P2d 123 (1976). The Supreme Court, at 472, held that attorney's fees awarded pursuant to ORS 20.096, based upon the terms of a contract, are not properly awarded as costs. Instead, attorney's fees must be pled and proved (or a stipulation entered into allowing the court to determine them). Because attorney's fees awarded pursuant to ORS 20.096 are not merely costs incidental to judicial administration, awarding them is a matter of substantive, rather than procedural, right.

Having concluded that awarding attorney's fees in this case is not a procedural question, we turn to whether Washington or Oregon law should apply. In *Lilienthal* it became clear that the old *lex loci contractus* approach to choice of law issues arising in contract cases was being discarded for the "interest analysis" approach. The first step in a choice of law analysis is to determine if there is a conflict. This involves discerning what policies underlie the different states' respective laws. This approach has been applied in tort cases. As stated in *Tower v. Schwabe,* 284 Or 105, 585 P2d 662 (1978), at 108:

" * * * [I]t is necessary to examine the interests and policies involved * * * for the purpose of determining whether both [jurisdictions] have a substantial interest because, if one or the other has no such interest, it is unnecessary to proceed further."

*See also Erwin v. Thomas,* 264 Or 454, 458, 506 P2d 494 (1973); *Fisher v. Huck,* 50 Or App 635, 624 P2d 177 (1981).[7] Where one state has been found to have no real

---

[7] While this court pointed out in *Fisher* the problems with policy analysis, the court nevertheless concluded, at 50 Or App at page 642, that "[b]ecause Oregon's now defunct policy does not conflict with the British Columbia policy, British Columbia law applies."

interest in the matter based on the policy behind its law, there is no conflict and the law of the only state with an interest is applied.

■   The Supreme Court stated in *McMillan v. Golden,* 262 Or 317, 320, 497 P2d 1166 (1972), that ORS 20.096:

"* * * was 'directed to the inequality of bargaining power which is so common in many commercial transactions' and [was meant] to 'neutralize the position of the parties and provide that regardless of such a provision in a contract [for award of attorney fees to one party to the contract] the prevailing party would be entitled to attorney fees.'"

In this case, irrespective of the laudable public policy behind ORS 20.096, we cannot see that the stated purpose of this statute would apply to a situation where none of the parties was a resident of Oregon at the time of making the contract. The defendants moved to Oregon after the transaction. The fortuity of defendants' later acquired residence in Oregon does not provide a reason for imposing Oregon's public policy. We conclude, therefore, that Oregon has no real interest based upon policy in this particular case that conflicts with Washington law. On the other hand, it is clear that Washington has an interest in the treatment to be afforded plaintiff, a Washington resident. We conclude there is no real conflict and the trial court did not err in applying Washington law.[8]

Affirmed.

---

[8] The effect on a choice of law question of the parties' change in domicile is discussed in the Restatement's (Second) Introductory Note to § 145, at page 414. In a tort situation where the plaintiff moves from state Y to state Z after the occurrence, the Restatement asks "Should this shift of the plaintiff's domicil from Y to Z have any impact upon choice of the law governing any of the issues that might arise between the plaintiff and the defendant by reason of the accident?" The Restatement concludes: "Presumably, this change of domicil should have no effect upon the law governing most of the issues involving the accident. But is this necessarily true of all issues? The problem is not dealt with in the Restatement of this Subject because existing authority is too sparse to warrant doing so."