# VANCOUVER FURNITURE CO., INC.,
*Respondent,*

*v.*

# INDUSTRIAL INDEMNITY CO.
# OF THE NORTHWEST,
*Appellant.*

## (A8204-02247; CA A32277)

704 P2d 518

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Douglas G. Houser, John W. Buehler, and Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Arden E. Shenker, Portland, argued the cause for respondent. With him on the brief were Michael J. Gentry, and Tooze Kerr Marshall & Shenker, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant insurer appeals from a judgment for plaintiff in this action on a fire insurance policy to recover for business interruption losses. The judgment is based on an order granting plaintiff's motion for partial summary judgment. The essence of the dispute under defendant's first assignment is which of two alternative amounts of damages found by an appraisal panel is recoverable by plaintiff. Defendant also assigns error to the trial court's award of attorney fees to plaintiff. We affirm.

Plaintiff operates two retail furniture stores in Vancouver, Washington. The parties refer to them respectively as the "downtown store" and the "warehouse store." The policy in question covers the downtown store. In October, 1981, there was a fire at that store, with resulting water damage to the building and inventory. During the 168-day period that the downtown store was unusable, plaintiff transferred sales personnel from the downtown store to the warehouse store. Plaintiff submitted a claim for business interruption loss. Defendant disputed the amount claimed and, pursuant to the policy, the issue was submitted to appraisal.[1]

The policy provides:

"5. RESUMPTION OF OPERATIONS: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business,

"(a) by complete or partial resumption of operations of the property herein described, whether damaged or not, or

---

[1] The trial court decided the damages issue on cross-motions for summary judgment. The parties vehemently disagree over whether the record in the summary judgment proceeding established whether and to what extent the downtown store operations were transferred to the warehouse store. Plaintiff disputes what it describes as defendant's "constant theme * * * that plaintiff simply 'transported' its [downtown] store operation, lock, stock and barrel * * * to the warehouse retail operation." The point plaintiff attempts to make by that statement is that some of defendant's legal arguments are weakened, because they rest on a mistaken factual premise. What plaintiff comes perilously close to demonstrating instead is that there is an unresolved factual question in the case and that summary judgment should not have been granted. However, under our interpretation of the relevant policy provisions and of the appraisers' findings, plaintiff is entitled to recover the amount of damages which the trial court awarded regardless of what the answer to the factual question is, and the question is therefore immaterial, whether or not it is unresolved.

"(b) by making use of other property at the location(s) described herein or elsewhere,

"such reduction shall be taken into account in arriving at the amount of loss hereunder.

"6. EXPENSE TO REDUCE LOSS: This policy covers such expenses as are necessarily incurred for the purpose of reducing any loss under this policy (EXCEPT EXPENSES INCURRED TO EXTINGUISH A FIRE) NOT EXCEEDING, HOWEVER, THE AMOUNT BY WHICH THE LOSS HEREUNDER IS THEREBY REDUCED."

The appraisers found:

"1. The amount of business interruption loss if only the downtown location is considered:

$504,000.00

"2. In the exercise of due diligence and dispatch, how many days of suspension of operations occurred at the downtown store location at 1101 Broadway, as a result of the water damage loss of October 24, 1981?

8 days total suspension

160 days partial suspension

168 days (Total)

"3. The amount of business interruption loss if both the downtown and warehouse locations are considered, considering that no expenses were incurred for the purpose of reducing the loss:

$175,200.00

"Note re: Answer No. 3: If delivery and handling, advertising; selling and general and administrative expenses are deemed to have been incurred for the purpose of reducing the loss, the loss considering both locations was $504,000.00."

After the appraisers filed their findings, plaintiff's attorney requested clarification about two matters:

"1. Since the Broadway store, itself, was not capable of resuming partial operations after eight days, I understand that the partial suspension figure in question 2 of the appraisal award represents a determination that the increased sales at the *warehouse retail store* were taken into account as the basis for determining that the Broadway store had 'partial suspension'.

"2. The delivery and handling, advertising, selling and general and administrative expenses referred to in the note following the answer to question No. 3 of the appraisal award refer to the expenses not normally incurred in connection with the 'normal' warehouse sales, but were the expenses incurred in connection with the increased warehouse sales during the time the Broadway store was out of operation." (Emphasis in original.)

The umpire confirmed the attorney's understanding of the first matter. As to the second, he stated:

"I believe that the appraisal panel found that the insured incurred *no* expenses beyond what it would *normally* have incurred. If, however, a court were to hold that such expenses incurred at the warehouse should be considered, even though not beyond what would normally have been incurred in regular operations, our award would be as stated in the comment to Question No. 3 of the appraisal award." (Emphasis in original.)

■ The trial court awarded plaintiff damages equal to $504,000, less the amounts defendant had tendered. Defendant argues that plaintiff was entitled to recover only the $175,200 that had been tendered. Defendant contends that, under the "resumption of operations" provision of the policy, plaintiff was required to and did make use of its second facility to carry on the operations of the downtown store. It was therefore not entitled to recover the amount of loss that the appraisers found on the basis of their consideration of the downtown store alone. According to defendant, plaintiff is entitled only to the amount of loss that the appraisers found on the basis of their consideration of both stores, without any adjustment for expenses, because plaintiff's expenses did not go beyond "what would normally have been incurred in regular operations" and the expenses were, therefore, not reimbursable under the "expense to reduce loss" provision of the contract.

Plaintiff argues that the policy covered only the downtown location, that plaintiff was not required to make use of the separately-insured warehouse facility to comply with the "resumption of operations" provision, and that plaintiff is therefore entitled to compensation for the loss the appraisers found for the downtown facility alone. Plaintiff contends alternatively that, if it was required to use the

warehouse facility for "mitigating sales," it is entitled "to reimbursement or offset for the expenses incurred in making those mitigation sales." Finally, plaintiff states in response to defendant's argument concerning the "expense to reduce loss" provision:

> "* * * Defendant's conclusion is that the appraisal panel 'determined that none of the expenses incurred by Plaintiff at the warehouse retail store during the resumption of its downtown store's operations were the kind of expenses that fall within the "Expense To Reduce Loss" provision of the insurance contract'. In fact, the appraisal panel recognized that it was not its function to 'determine' legal issues. The appraisal panel left for subsequent judicial determination what types of expenses were or were not covered by the 'Expense To Reduce Loss' provision; the panel merely found that no 'extraordinary' expenses were incurred but that sales expenses related to the 'mitigating' sales were incurred which restored the amount of business interruption loss to the sum of $504,000.00. Since the policy does not require reimbursable expenses to be 'extraordinary,' those expenses are reimbursable to plaintiff. Defendant's repeated reassertions that reimbursable expenses must be extraordinary expenses simply have no source in defendant's policy provisions."

We agree with plaintiff's conclusion regarding the deduction of expenses. The parties acknowledge that they are bound by the appraisers' decision (although they do not agree about what the decision means). The appraisers found that, calculating the loss at the downtown store alone *or* calculating it at both stores *with* adjustments for expenses, the amount to which plaintiff is entitled is $504,000. The argument with which defendant is left is that plaintiff is not entitled to an expense adjustment in the latter calculation because, notwithstanding defendant's assertion that plaintiff was required by the "resumption of operations" provision to mitigate its loss at the downtown facility through operations at the warehouse location, the "expense to reduce loss" provision does not allow plaintiff to recover "ordinary" expenses for operations at the warehouse.

As plaintiff points out, the language of the contract cannot allow defendant to have it both ways. If plaintiff was required to transfer its downtown operations to the warehouse facility, at least some of the "ordinary" expenses at the latter were "necessarily incurred for the purpose of reducing [the]

loss" and were therefore recoverable under the "expense to reduce loss" provision. The appraisers made a finding about the amount of the expenses. It may be that the expenses attributable to the downtown store operations conducted at the warehouse facility and the expenses attributable to ongoing operations of the warehouse facility itself could have been better segregated than they were in the appraisal proceedings and in the trial court proceedings. However, *defendant* does not suggest that there are any unresolved material fact issues concerning the resumption of operations or the nature and the amount of plaintiff's concomitant "ordinary" expenses. *See* note 1, *supra*. The trial court did not err in its award of damages.

■    Defendant next assigns error to the award of attorney fees to plaintiff pursuant to ORS 743.114. There is no Washington statute corresponding to ORS 743.114 that provides for awards of attorney fees to insureds who prevail in actions on policies. Defendant argues that, because the loss occurred in Washington, the law of that forum, rather than Oregon law, is applicable and that the court therefore should not have awarded any attorney fees. Plaintiff appears to agree that Washington law governs the substantive insurance issues in the case. *See* Restatement (Second) Conflict of Laws, § 193 (1971). However, plaintiff argues that attorney fees under ORS 743.114 are awardable "as part of the costs of the action," and that their award is therefore a procedural matter subject to Oregon law. That is the law. *See Long v. Storms,* 52 Or App 685, 629 P2d 827 (1981); *Seattle-First National Bank v. Schriber,* 51 Or App 441, 625 P2d 1370 (1981).

■    Defendant also argues that the trial court should not have included in the award fees for plaintiff's attorneys' services during the appraisal and pre-appraisal periods. Although the question is close, we conclude that under the facts here the trial court did not abuse its discretion by including the contested amounts in the attorney fee award.

Affirmed.