Argued and submitted October 22, 1986, affirmed on appeal and on cross-appeal
April 22, 1987

YOUNG et al,
*Plaintiffs,*

*v.*

MOBIL OIL CORPORATION,
*Appellant - Cross-Respondent,*

*v.*

MYERS DRUM COMPANY,
*Respondent - Cross-Appellant.*

(A8203-01737; CA A36144)

735 P2d 654

James N. Westwood, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were John D. Burns, C. Edward Fletcher, III, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

James H. Marvin, Portland, argued the cause for respondent - cross-appellant. With him on the brief were Richard H. Divine and Schouboe, Marvin & Furniss, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

The only issue presented by this appeal[1] is whether third-party defendant Myers Drum Company (Myers) has a contractual duty to indemnify defendant/third-party plaintiff Mobil Oil Corporation (Mobil) for a payment made to plaintiffs in settlement of their claims against Mobil.[2] The trial court held that the indemnity provision in Myers' contract with Mobil is void. We affirm.

The facts are not disputed. Mobil is a New York corporation with headquarters in that state, and Myers, until 1985, was a subsidiary of a California corporation. On November 1, 1979, Mobil entered into a contract with Myers that was negotiated in California. It provided that Myers would pick up used 55-gallon oil drums from Mobil's plant in Portland, recondition them at its Portland plant and return the drums to Mobil's plant. An indemnity provision in the contract provided that Myers would

> "indemnify and hold Mobil harmless against all losses, expenses, liability and claims * * * for death, personal injury or property damage arising out of the work hereunder by [Myers] or any subcontractor or their agents or employes."

The contract also provided that New York law was to govern the agreement.

On April 15, 1980, plaintiff, an employe of Myers, suffered injuries at Mobil's plant while delivering reconditioned drums. As permitted by the workers' compensation system, ORS 656.001 to ORS 656.794, he and his wife brought an action against Mobil, alleging negligence and seeking damages for his injuries and for loss of consortium. Mobil filed a third-party complaint against Myers and others for indemnity. Mobil later settled with plaintiffs on all of their claims, paying them $30,000. When Myers declined to participate in the settlement, Mobil pursued its contractual indemnity claim. After trial, the court granted Myers' motion to dismiss

---

[1] Because we affirm the trial court, we need not address the issues raised by Myers in its cross-appeal. We therefore affirm on the cross-appeal.

[2] The claim of plaintiffs against Mobil has been settled and their complaint dismissed; the third-party claims of Mobil against A. J. Bayer Company, Truck Insurance Exchange and Elmer L. Hamm have all been dismissed. Appropriate judgments were entered.

the third-party complaint on the basis of ORS 656.018(1) and *Roberts v. Gray's Crane & Rigging,* 73 Or App 29, 697 P2d 985, *rev den* 299 Or 443 (1985). Mobil appeals.

Mobil contends that the trial court erred by not enforcing the choice-of-law clause in the contract, which would apply New York law and, Mobil contends, result in enforcement of the indemnity provision. Myers argues that ORS 656.018(1)[3] sets forth a fundamental public policy of Oregon that operates to void the indemnity provision *despite* the choice-of-law clause and that our holding in *Roberts v. Gray's Crane & Rigging, supra,* compels that result. Myers alternatively urges that if New York law is applied, it would defer to Oregon law under the facts of this case and that, therefore, under ORS 656.018(1), the indemnity provision is void. We address in turn how Oregon law and New York law resolve the issue.

In construing contracts, Oregon adheres to the rule that the intention of the parties prevails. *Miller v. Miller,* 276 Or 639, 555 P2d 1246 (1976). That rule gives parties the autonomy to choose the law that is to govern their contracts. *Sterrett v. Stoddard Lbr. Co.,* 150 Or 491, 46 P2d 1023 (1935); *see Warm Springs Forest Products Ind. v. EBI Co.,* 300 Or 617, 716 P2d 740 (1986). There are, however, limits to parties' autonomy in choosing that law. Restatement (Second) Conflict of Laws § 187(2) (1971) provides:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied * * * unless either

"(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

"(b) application of the law of the chosen state would be

---

[3] ORS 656.018(1) provides, in relevant part:

"The liability of every employer who satisfies the duty required by ORS 656.017(1) [to maintain assurance that workers and their beneficiaries will receive compensation for compensable injuries] is exclusive and in the place of all other liability arising out of compensable injuries to the subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries * * *."

contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties."

■ Oregon cases have dealt with choice of law issues in contract actions, but none of them has concerned contracts containing choice of law clauses. *See Lilienthal v. Kaufman,* 239 Or 1, 395 P2d 543 (1964); *Citizens First Bank v. Intercontinental Express,* 77 Or App 655, 713 P2d 1097 (1986); *Seattle-First National Bank v. Schriber,* 51 Or App 441, 625 P2d 1370 (1981). *Lilienthal* adopted the principle that the law applied should be that of the state having the most significant relationship to the parties and the transaction. Later cases have followed the *Lilienthal* approach, citing Restatement (Second) Conflict of Laws § 188 (1971) as additional authority. *Citizens First Bank v. Intercontinental Express, supra; Seattle-First National Bank v. Schriber, supra.* Our cases also have implicitly followed the methodology of § 187(2). In *Seattle-First National Bank v. Schriber, supra,* where the issue was whether Oregon law or Washington law was to apply, we stated that, "even if Washington were to have more and closer contacts with this transaction, [*the*] *public policy expressed in* [*the Oregon statute*] *is so important that Oregon law should be applied.*" 51 Or App at 446. (Emphasis supplied.) We follow the analysis set forth in § 187(2) of the Restatement to resolve the issue in this case under Oregon law.

New York law also follows the principle that the parties may choose the law that is to govern their contracts. *See A.S. Rampell, Inc. v. Hyster Co.,* 3 NY2d 369, 144 NE2d 371, 165 NYS2d 475 (1957); *Compania de Inversiones Internacionales v. Industrial Mortgage Bank of Finland,* 269 NY 22, 198 NE 617 (1935). The parties' choice of law may include the conflict of laws principles applied under that law. *Carlos v. Philips Business Systems, Inc.,* 556 F Supp 769, *aff'd* 742 F2d 1432 (2d Cir 1983) (applying New York law). The parties' freedom of choice, however, is not absolute. *See Nakleh v. Chemical Construction Corp.,* 359 F Supp 357 (SD NY 1973) (applying New York law). Although the parties' choice of law is to be given considerable weight, the law of the jurisdiction with the most significant contacts is the law to be applied. *Haag v. Barnes,* 9 NY2d 554, 175 NE2d 441, 216 NYS2d 65

(1961). Section 187(2) (1971) sets forth the significant relationship test adopted by New York courts. *S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F Supp 1014 (SD NY 1984); *Nakleh v. Chemical Construction Corp., supra; see Bank Itec N.V. v. J. Henry Schroder Bank & Trust,* 612 F Supp 134 (SD NY 1985). New York law, therefore, like Oregon law, applies section 187 methodology in cases where the parties have contractually chosen the law that is to govern.[4]

Because both Oregon and New York apply the same methodology and would, presumably arrive at the same result, a false conflict is presented. The dispositive issue is, therefore, whether ORS 656.018(1) sets forth a fundamental public policy of this state.[5] If, as we conclude, the statute states such a policy, the indemnity provision is void.

We must first determine what constitutes a "fundamental public policy." *Comment* g to § 187 explains:

"The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of [§ 187(2)(b)] * * *.

"* * * * *

"To be 'fundamental,' a policy must * * * be a substantial one. * * * [A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal * * *."

Oregon requires that a public policy be clear and "overpowering" before a court will interfere with the parties' freedom to contract on the ground of public policy. *See Harrell v. Travelers Indemnity Company,* 279 Or 199, 567 P2d 1013 (1977). In *Schultz v. First Nat. Bk. of Portland,* 220 Or 350, 358, 348 P2d 22 (1959), the Supreme Court stated that a foreign contract is invalid in Oregon if it is "offensive to our moral standards or here regarded as injurious to the public welfare." The court, quoting from *Loucks v. Standard Oil Co.,* 224 NY 99, 120 NE 198, 202 (1918), also stated that such a contract is enforceable

---

[4] New York applies § 187 methodology even when the parties choose New York law to govern. In *Business Incentives, Inc. v. Sony Corp. of Amer.,* 397 F Supp 63 (SD NY 1975), New Jersey law was applied despite a New York choice-of-law clause, because New Jersey had a strong public policy at stake, greater contacts with the transaction and a materially greater interest in applying its law.

[5] Myers does not assert that subsection (a) of § 187(2) applies here (*i.e.,* that there is no reasonable basis for choosing New York law).

unless it " 'would violate some fundamental principle of justice, some prevalent conception of good morals [or] some deep-rooted tradition of the common weal.' " 220 Or at 360. We turn then to the policy expressed in ORS 656.018(1).

In *Roberts v. Gray's Crane & Rigging, supra,* we decided that, under ORS 656.018(1), the indemnity agreements between the parties involved were void. In that case, an allegedly negligent third-party had sought indemnity from a employer who was subject to the Workers' Compensation Act. We analyzed ORS 656.018(1):

"Under the Workers' Compensation Act, a subject employer's duty to maintain coverage for its subject workers, ORS 656.017(1), is its exclusive liability for injuries to those workers. ORS 656.018. Before amendment in 1977, ORS 656.018(1) provided:

" 'Every employer who satisfies the duty required by subsection (1) of ORS 656.017 is relieved of all other liability for compensable injuries to his subject workmen, the workmen's beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries, except as specifically provided otherwise in ORS 656.001 to 656.794.'

"In *U.S. Fidelity v. Kaiser Gypsum,* 273 Or 162, 539 P2d 1065 (1975), the Supreme Court held that the statute did not bar an action for common law indemnity by a third party against an employer, when the third party's liability to an injured worker had resulted from a breach of an express or implied independent duty owed by the employer to the third party. On the same day that *Kaiser Gypsum* was decided, the Supreme Court held that the statute did not bar an indemnity action by a third party against an employer under an express contract of indemnity. *Gordon H. Ball v. Oregon Erect. Co.,* 273 Or 179, 539 P2d 1059 (1975). The court noted that '[t]here is no indication that the legislature in enacting ORS 656.018(1) intended to preclude an employer from *voluntarily* contracting with a third party to indemnify it for damages paid to an injured employee.' 273 Or at 185. (Emphasis in original.)

"In 1977, ORS 656.018 was amended. Or Laws 1977, ch 804, § 3a. The statute now provides:

" '(1)(a) The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in

place of all other liability arising out of compensable injuries to his subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, *specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injures,* except as specifically provided otherwise in ORS 656.001 to 656.794.

" '(b) This subsection shall not apply to claims for indemnity or contribution asserted by a corporation, individual or association of individuals which is subject to regulation pursuant to ORS chapter 757 or 760.

" '(c) *Except as provided in paragraph (b) of this subsection, all agreements or warranties contrary to the provisions of paragraph (a) of this subsection entered into after July 19, 1977, are void.*

" '* * * * * .' (Emphasis supplied.)

"The statute was amended to overturn the holding of *U. S. Fidelity v. Kaiser Gypsum, supra. Boldman v. Mt. Hood Chemical Corporation,* 288 Or 121, 124 n 1, 602 P2d 1072 (1979). The legislative history of the amendment indicates that it was equally intended to abrogate the holding of *Gordon H. Ball v. Oregon Erect. Co., supra.*

"Contrary to [third-party plaintiff's] contention that 'there is nothing on the face of the language of ORS 656.018(1)(a) which bars *express* indemnity agreements,' the statute clearly bars such agreements. The best evidence of the purpose of a statute is its language. * * * Subsection (1)(a) provides that the employer's duty to provide workers' compensation coverage shall be its exclusive liability for injuries to its workers and specifically protects the employer from third-party claims for contribution or indemnity. Subsection (1)(c) provides that *all* agreements or warranties to the contrary entered into after July 19, 1977, are void.

"* * * * *

"[W]e hold that ORS 656.018 * * * is reasonably necessary to maintain the balance in the Workers' Compensation Act. The legislative history of the 1977 amendments to ORS 656.018 reveals that the legislature amended the statute to restore the exclusive liability protection former ORS 656.018(1) was understood to afford the employer before *U.S. Fidelity v. Kaiser Gypsum, supra,* and *Gordon H. Ball v. Oregon Erect. Co., supra.* The legislature was concerned that

third-party indemnity claims against employers would circumvent and undermine the exclusive liability provision. Obviously, if employers were liable for such claims, workers' compensation would no longer be their exclusive liability. The legislature also expressed concern about the costs and prolonged litigation threatened by such claims." 73 Or App at 32-36. (Citation omitted; emphasis in original.)

Oregon's workers' compensation laws "provide the overall social benefits deriving from a uniform workmen's compensation system." *Giltner v. Commodore Con. Carriers,* 14 Or App 340, 345, 513 P2d 541 (1973). As *Roberts* says, the exclusive liability provision forms an essential part of this state's workers' compensation system. That the 1977 amendments were enacted in immediate response to *U.S. Fidelity v. Kaiser Gypsum, supra,* and *Gordon H. Ball v. Oregon Erect. Co., supra,* indicates a strong legislative intent to void *all* indemnity agreements subjecting an employer to additional liability. The legislative response also indicates that it considered the policy granting employers exclusive liability to be a compelling and "overpowering" one. Neither the statute nor its legislative history leads us to think that the legislature intended not to provide a subject employer like Myers with the same protection afforded by ORS 656.018(1) to the injured worker's employer in *Roberts* or to protect a negligent third-party merely because the parties chose another state's law to govern their agreement.

If parties to a contract could circumvent the workers compensation laws by choosing the law of another jurisdiction to govern their agreement, the statutory scheme would break down, thereby causing "injury to the public welfare." To allow a negligent third party in Mobil's position to be indemnified totally for its negligence would subvert the policy stated in ORS 656.012(2)(d):

"To encourage maximum employer implementation of accident study, analysis and prevention programs to reduce the economic loss and human suffering caused by industrial accidents."

That policy essentially encourages the employer to provide a safe workplace. However, if Mobil is indemnified by other companies for injuries to those companies' employes that occur on Mobil's premises because of hazards there, then Mobil has less incentive to provide a safe workplace than

when no indemnity is allowed. The exclusive liability provision is therefore a cornerstone of the fundamental policy stated in ORS 656.012(2)(d). For those reasons, we hold that ORS 656.018(1) evinces a fundamental public policy of this state that voids the indemnity provision in the agreement between Myers and Mobil.[6] The trial court did not err in dismissing Mobil's third-party complaint against Myers.

Affirmed on appeal and on cross-appeal.

---

[6] We do not find Mobil's arguments to the contrary convincing. It argues that the statute does not state a fundamental public policy, because it "is riddled with exceptions." The only exceptions found in the statute are for railroads and regulated public utilities. Another "exception" merely prevents any retroactive effect of the amendments. Mobil also urges that a single statute does not constitute a fundamental public policy, relying on *Schultz v. First Nat. Bk. of Portland, supra.* That reliance is misplaced. *Schultz* states the principle that a statute will invalidate a foreign contract if the statute expresses some fundamental public policy and the foreign contract is regarded as injurious to the public welfare, because it violates that public policy. In this case, we have just such a policy set forth by the statute and just such a contract.