119 F.3d 6
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MEDFORD CORPORATION, aka Medite Corporation; Contran
Corporation; Valhi, Inc., Plaintiffs,
and
CERTAIN UNDREWRITERS AT LLOYDS, LONDON, Plaintiff-Appellant,
v.
CRAWFORD & COMPANY, d/b/a Crawford & Company, Inc., a
Georgia Corporation, Defendant-Appellee.
MEDFORD CORPORATION, aka Medite Corporation; Valhi, Inc.;
Certain Underwriters at Lloyds, London,
Plaintiffs-Appellants,
v.
CRAWFORD & COMPANY, d/b/a Crawford & Company, Inc.,
Defendant-Appellee.
 Nos. 95-36101, 95-36190, CV-94-03011 JAR, 95-36105,
95-36190, 96-35533.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 3, 1997
Filed July 17, 1997.
 
 1
 Appeal from the United States District Court for the District of Oregon, James A. Redden, District Judge, Presiding.
 
 
 2
 Before FLETCHER, TASHIMA, Circuit Judges, and SCHWARZER,** Senior District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 This is an action by Valhi, Inc., and its wholly-owned subsidiary, against Crawford & Co. alleging, in a second amended complaint[1], claims for breach of contract, negligence and fraud arising out of a contract to perform fire prevention inspections at a wood veneer mill located in Medford, Oregon, and owned by Valhi's wholly-owned subsidiary, Medite Corporation. Valhi also alleges a claim for breach of contract, negligence and fraud in connection with performance of a post-fire inspection contract. Medite joined as a plaintiff in the negligence and breach of contract claims. Underwriters at Lloyds also joined as a plaintiff to recoup funds paid by them to plaintiffs under an indemnity policy issued to plaintiffs. The action arises out of a June 1992 fire which destroyed the mill and caused a loss of some $20 million.
 
 
 5
 The district court granted Crawford's motions for summary judgment on Valhi's fraud and damage claims. The case went to trial on Medite's breach of contract and negligence claims and the jury returned a verdict for Crawford. Thereafter, the district court, applying Oregon's reciprocal fee statute, awarded Crawford attorneys' fees of $124,572.56. Plaintiffs appeal from the judgment and the order awarding fees. The district court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment but reverse the award of attorneys' fees.
 
 THE MERITS APPEALS
 A. Valhi's Fraud Claims
 
 6
 The district court granted summary judgment against Valhi on its fraud claims. Those claims are described in Valhi's brief as follows:
 
 
 7
 (1) The "confidence in the inspector" claim.
 
 
 8
 Sometime before the fire, Valhi learned of another Crawford client's dissatisfaction with the performance of the inspector assigned to the Medford mill. When it brought that information to Crawford's attention, the latter falsely denied the existence of a problem, praised the inspector, and reassured Valhi. In fact, Crawford had been having serious performance problems with this inspector and had received complaints from other clients but concealed this information from Valhi. The incompetent inspector left Crawford's employ before the fire and a new inspector took over. During this period, personnel at the mill asked to postpone the scheduled February 1992 reinspection because of a problem with sprinkler pipes freezing during tests. Had Valhi known of Crawford's problems with its prior inspector, it would not have agreed to the postponement. Had there been no postponement, a competent engineer would have discovered the previous fire history in Medite's dryer. Had this hazard been disclosed, it would have been fixed before the fire, and the fire would not have occurred.
 
 
 9
 (2) The post-fire investigation report claim.
 
 
 10
 After the fire, Valhi hired Crawford to investigate and report on its cause and origin. Crawford's inspector discovered a disturbing history of fires starting in the dryer. Crawford did not disclose this information in its report, presumably because of its concern about its own liability exposure. Thus, Crawford had a conflict of interest that it failed to disclose to Valhi. As a result, Valhi was prejudiced by having to pay $5,000 for a bogus report and by permitting Crawford to maintain a highly valuable commercial relationship with Valhi.
 
 
 11
 Valhi contends that this evidence, viewed in the light most favorable to Valhi, raised triable issues of fact on both fraud and breach of fiduciary duty theories. Granting summary judgment on the fraud/fiduciary duty claims the district court held, first, that plaintiffs cannot prove by clear and convincing evidence the requisite elements of actual fraud under Oregon law and, second, that while in the case of a fiduciary relationship fraud may be proved by failure to disclose material facts, here no fiduciary relationship could be found. We address both parts of the ruling in the following paragraphs.
 
 1. Actual Fraud
 
 12
 Oregon requires proof by clear and convincing evidence of a material false representation known by the speaker to be false and intended to induce reliance, the hearer's ignorance and reasonable reliance, and consequent and proximate injury. Oksenholt v. Lederle Lab., 656 P.2d 293 (Or.1982); Webb v. Clark, 546 P.2d 1078 (Or.1976). Even assuming that Valhi may have raised triable issues with respect to some of the elements, it has failed to come forward with facts from which a jury could find, by clear and convincing evidence, either that Valhi relied on nondisclosure of the alleged facts or that the alleged nondisclosures resulted in consequent and proximate injury. Valhi knew of problems with the inspector before the fire; the inspector was, in fact, replaced before the fire and a new one assigned who could have made whatever reinspection was called for; and the decision not to run the scheduled tests on the sprinkler system was made by Medite's personnel for unrelated reasons. As for the post-fire report, even if it was incomplete, Valhi has not shown how it relied on any fraud or nondisclosure to its detriment or how it suffered consequent injury; the $5,000 fee it paid for the report (which might have been recoverable under the abandoned eighth cause of action for breach of contract) is not damage which is a "direct and necessary result of defendant's acts or omissions." Oksenholt v. Lederle Lab., 656 P.2d 293, 299 (Or.1982).
 
 2. Fiduciary Breach
 
 13
 Valhi contends that a fiduciary relationship existed between it and Crawford and that as a result the burden shifts to Crawford to disprove fraud. A professional engineer owes a duty of care to his client, giving rise to liability in the event of a breach. See Onita Pacific Corp. v. Trustees of Bronson, 843 P.2d 890, 897 (Or.1992). That duty of care includes a duty to disclose to the principal all facts relevant to affairs entrusted to him. Restatement (Second) of Agency, § 381. But the existence of a duty of care, standing alone, does not shift the burden of proof from the plaintiff. Because the Oregon cases in this area all appear to involve real estate brokers, who are acknowledged fiduciaries, it is not clear how the Oregon courts would deal with the burden of proof on a nondisclosure claim against a professional engineer. The Oregon Supreme Court has held, however, that even in the case of real estate brokers, the party claiming a breach of a fiduciary duty must prove the existence of a fiduciary relationship, the breach of duty, and the resulting loss. Lindland v. United Bus. Inv., 693 P.2d 20, 25 (Or.1984). Only where a claim of nondisclosure relates to self-dealing or conflict of interest does the burden of proving full disclosure shift to the "fiduciary." Lindland v. United Bus. Inv., 693 P.2d 20, 23-25 (Or.1984). Assuming Oregon law would treat professional engineers the same as real estate brokers, the burden of proving full disclosure would shift to Crawford only if it were engaged in self-dealing or had a conflict of interest.
 
 
 14
 As for the confidence in the inspector claim (with respect to which Valhi makes no claim of conflict or self-dealing), no reasonable jury could find that under the circumstances the failure to disclose the first inspector's performance problems with other clients was material, given that a new inspector was assigned well before the fire and that the failure to test the sprinkler was unrelated to the performance or nonperformance of the earlier inspector. As for the post-fire investigation report claim, even if Crawford had an interest in avoiding self-incrimination in its report, Valhi has shown no facts from which a jury could find that it suffered consequential injury as a result of the withheld information. Thus, the summary judgment on the fraud claims must be affirmed.
 
 B. Valhi's Contract and Negligence Claims
 
 15
 Valhi sought, as damages for its breach of contract and negligence claims, the value of its Medite stock in the amount of the fire loss. The district court granted summary judgment on this damage claim, holding that under Oregon law the cause of action for diminution of stock belongs solely to the corporation, not the shareholder, and that in this case the claim would result in double recovery of the same loss.
 
 
 16
 We need not address Valhi's argument, based on Weiss v. Northwest Acceptance Corp., 546 P.2d 1065 (Or.1976), that it is entitled to recover for the diminution of the value of its Medite stock by reason of damage suffered by its wholly owned subsidiary. Both its contract and its negligence claims are barred by the judgment for Crawford in the trial on Medite's claims.
 
 
 17
 After the court dismissed Valhi's damage claims, the case went to trial on Medite's third-party beneficiary claim for breach of the same contract. The jury returned a verdict for Crawford, thus determining that the contract was not breached. It is settled law that a judgment against the third-party beneficiary extinguishes the contractual obligation. See Restatement (Second) of Judgments, § 56(2) ("A judgment against the third party beneficiary in an action on the obligation to him terminates the promisor's obligation to the promisee"); 18 Wright, Miller & Cooper, Federal Practice and Procedure, § 4460 p. 530 (1981) ("Judgment against the beneficiary ... defeats an action by the promisee, not as a matter of preclusion by judgment but on the ground that as a matter of contract law the promisor has no further obligation to perform."); Hikita v. Nichiro Gyokyo Kaisha, Ltd., 713 P.2d 1197 (Ala.1986) (same). Valhi's argument that the issues tried on Medite's third-party beneficiary breach of contract claim differ from those that would be tried on its breach of contract claim therefore is of no avail.
 
 
 18
 On Medite's negligence claim, the jury also returned a verdict for Crawford. Valhi argues that verdict is not preclusive because Medite's claim was subject to defenses not applicable to Valhi, particularly comparative negligence. Valhi asserts that the jury may have found no liability based on a finding of comparative negligence, and that the jury did not necessarily adjudicate the question of Crawford's negligence. But Valhi misstates the record. Here is how the court instructed the jury with respect to its responses to the special verdict form:
 
 
 19
 ... Proceed to question four.
 
 
 20
 Was the Defendant Crawford & Company negligent in one or more of the ways alleged in plaintiff's complaint? Answer yes or no.
 
 
 21
 If your answer to question four is no, your verdict is for the defendant.... Do not answer any more questions.
 
 
 22
 (Tr. 1345.) The jury answered "no" to question four and answered no more questions. Thus it never reached the question of comparative negligence. The verdict determining that Crawford was not negligent in performing its contract with Valhi precludes Valhi's damage claim.
 
 C. Valhi's Eighth Cause of Action
 
 23
 Valhi's eighth cause of action alleged breach of the contract relating to Crawford's post-fire investigation. Valhi contends that the court erroneously entered judgment without permitting the parties to go to trial on this claim. What the court did was make a pretrial ruling excluding certain testimony (essentially that relied to the fraud claim discussed above) as irrelevant to the breach of contract claim; the court said that if this evidence involved a separate contract claim, it would have to be tried at a later time.
 
 
 24
 The eighth cause of action never came to trial. When the jury returned its verdict at the end of the Medite trial, all counsel thanked the court and went their separate ways. Valhi made no move to bring this cause of action to trial. It permitted judgment to be entered without objection, and made no post-judgment motion under Rules 59 or 60. See Fed.R.Civ.P. 59, 60 (rules governing motions for new trials and for reopening prior judgments). This claim has therefore been waived.
 
 D. Medite's Appeal
 
 25
 Medite appeals the district court's ruling excluding certain evidence. Principally, it contends the district court erred in excluding evidence concerning (1) problems Crawford was having with its inspector, (2) Crawford's misrepresentations concerning its confidence in the inspector, and (3) undisclosed information concerning the post-fire investigation. According to its brief, these questions were relevant to whether Crawford breached the inspection contract by not asking proper questions of local operating personnel.
 
 
 26
 Evidentiary rulings are reviewed for abuse of discretion. Pau v. Yosemite Park & Curry Co., 928 F.2d 880 (9th Cir1991). It is not intuitively obvious that evidence concerning the inspector's allegedly poor performance for other clients and Crawford's dissatisfaction with him is relevant to whether the Valhi contract was breached or not. At best, it is remote and subject to a Fed.R.Evid. 403 analysis, which the court performed.[2] We cannot say that the court abused its discretion in excluding it.
 
 
 27
 Medite's second contention is that the court refused to permit it to offer evidence and to cross-examine to impeach the inspector's testimony that he always asked the right questions. That evidence appears to relate to what occurred at other firms served by Crawford. Medite has not demonstrated that the court abused its discretion in limiting cross-examination and rebuttal. Similarly, exclusion of evidence concerning the erroneous post-fire report, offered to show Crawford's consciousness of its own negligence, has not been shown to be an abuse of discretion.
 
 THE ATTORNEYS' FEES APPEAL
 
 28
 Following the trial, Crawford moved for attorneys' fees under the Oregon reciprocal fee statute.[3] The Valhi-Crawford contract contains provisions that obligate Crawford to indemnify Valhi under certain circumstances, as well as other, distinct provisions obligating Valhi to indemnify Crawford.[4] These provisions are more favorable to Valhi than to Crawford. The contract also provides that it shall be governed by Georgia law.[5]
 
 
 29
 The district court held that to apply Georgia rather than Oregon law would frustrate Oregon's fundamental policy, which is reflected in the statute that puts contracting parties on an equal footing regarding recovery of attorneys' fees.
 
 
 30
 The district court's choice of law determination is reviewed de novo, Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 644-45 (9th Cir.1988), and its fee award is reviewed for abuse of discretion. International Ass'n of Machinists v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir.1985).
 
 
 31
 Because this is a diversity case, the court applies the choice of law rules of the forum state, i.e., Oregon. Sims Snowboards, 863 F.2d at 645. Because the issue of entitlement to attorneys' fees is substantive rather than procedural, Seattle-First Nat'l Bank v. Schriber, 625 P.2d 1370, 1373 (Or.Ct.App.1981), a choice of law analysis must be made. Sims Snowboards, 863 F.2d at 645. Oregon follows section 187 of the Restatement (Second) Conflict of Laws, which provides in relevant part:
 
 
 32
 (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied ... unless either
 
 
 33
 (a) the chosen state has no substantial relationship to the parties or the transaction ... or
 
 
 34
 (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.
 
 
 35
 See Young v. Mobil Oil Corp., 735 P.2d 654, 656-57 (Or.Ct.App.1987).
 
 
 36
 Crawford does not contend that Georgia, its state of incorporation and location of its headquarters, has no substantial relationship to the parties (subsection (a), above). Instead it argues, under subsection (b), that Oregon, as the place of performance, has a materially greater interest in the case than Georgia. Oregon, however, is only one of seven different states and Canada in which the contract was to be performed. Moreover, Crawford's reading turns the rule on its head--by the terms of the rule, the issue of the relative interests of the states is reached only if it has been established that application of the law chosen by the parties "would be contrary to the fundamental policy of [Oregon]." In a decision directly on point, the Oregon Court of Appeal in Fiedler v. Bowler, 843 P.2d 961 (Or.Ct.App.1992), held that application of the choice of law provision in a promissory note, which called for application of Indiana law and thereby displaced the Oregon reciprocal fee statute, did not "circumvent a fundamental public policy of Oregon law." Id. at 963. The court said:
 
 
 37
 Defendants have not established any "clear and overpowering" policy reason to interfere with the parties' freedom to choose Indiana law for this transaction.... Applying Indiana law to disallow the fees is not "offensive to our moral standards" or "injurious to the public welfare."
 
 
 38
 Id. at 963-64; cf. Young, 735 P.2d 659 (holding that Oregon policy to provide workers' compensation trumps choice of laws clause that would circumvent it "because the indemnity provision at issue would violate the policy of exclusive employer liability for workplace injuries"). The policy underlying the statute "was 'directed to the inequality of bargaining power which is so common in many commercial transactions.' " Seattle-First, 625 P.2d at 1374, (quoting McMillan v. Golden, 497 P.2d 1166, 1168 (Or.Ct.App.1981)). In Seattle First, the court found that the purpose of the statute would not be served where--as here--none of the parties to the contract was a resident of Oregon. Moreover, from all that appears in the record, both Crawford and Valhi are substantial corporations, with similar bargaining power.
 
 
 39
 We therefore hold that the parties are bound by the choice of law clause of the contract and that the award of attorneys' fees must be set aside.
 
 CONCLUSION
 
 40
 The judgment is AFFIRMED. The order awarding attorneys' fees is VACATED. The parties shall bear their own costs on appeal.
 
 
 
 **
 The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 On the eve of trial, plaintiffs filed a third amended complaint which adds Underwriters at Lloyds as a plaintiff in the caption but in all other respects is identical to the second amended complaint
 
 
 [2]
 Medite argues that the evidence is relevant to the claim that Crawford delayed the January/February 1992 inspection of the mill. This contention is in direct conflict with Valhi's assertion in its brief that local operating personnel asked for a delay of the inspection until warmer weather because of a problem with outdoor sprinkler pipes freezing
 
 
 [3]
 Or.Rev.Stat. § 20.096 provides in relevant part that "in any action ... on a contract, where such contract specifically provides that attorney fees ... incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, ... shall be entitled to reasonable attorney fees...."
 
 
 [4]
 In its reply brief, Valhi contends that the Oregon statute does not apply because the contract does not satisfy the statutory prerequisite that it "specifically provide[ ] that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded...." While we think that an Oregon court might find the statute inapplicable to this contract, see McMillan v. Golden, 497 P.2d 1166, 1168 (Or.1972) (denying fees on appeal where contract did not "specifically provide[ ]" for fees on appeal), in view of our disposition of this appeal we do not need to consider whether we should depart from our normal practice to entertain this contention first raised in the reply brief
 
 
 [5]
 The parties have pointed to no provision of Georgia law that would permit Crawford to recover attorneys' fees